**DISTRICT OF COLUMBIA, Appellant,**

v.

**Henry B. HUNT, Appellee.**

**No. 85–770.**

District of Columbia Court of Appeals.

Argued Dec. 1, 1986.

Decided Jan. 26, 1987.

Edward E. Schwab, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Edward J. Tolchin, with whom Jill L. Martin, Washington, D.C., was on the brief, for appellee.

Before PRYOR, Chief Judge, and MACK, Associate Judge, and GALLAGHER, Senior Judge.

PRYOR, Chief Judge:

This case raises questions of statutory interpretation relating to the District's Comprehensive Merit Personnel Act, D.C. Code §§ 1–601.1 *et seq.* (1981), and the District's Self-Government Act (Home Rule Act), D.C.Code §§ 1–201 *et seq.* (1981). The issue presented is whether entitlement to attorney's fees, available under the former federal civil service scheme, survives for District of Columbia employees who successfully litigate personnel actions and who were hired before the District superseded those portions of the federal scheme in the Comprehensive Merit Personnel Act (CMPA).

The instant case was filed in the Superior Court by appellee Henry B. Hunt, an employee of the District of Columbia Department of Human Services (DHS), to obtain review of the decision of the District of Columbia Office of Employee Appeals (OEA) that denied him attorney's fees after OEA had reversed a decision by DHS to terminate his employment.[1]

The Superior Court reversed the decision of the OEA and awarded Mr. Hunt attorney's fees, holding (1) that the attorney's fees provision of the Federal Back Pay Act, 5 U.S.C. § 5596(b)(1) (1982) remained applicable to District employees employed before January 1, 1980, and (2) that the District's attempted supersession of the Federal Back Pay Act, D.C.Code § 1–633.-2(a)(5)(G) (1981), was invalid because it is contrary to the carryover provision of the Home Rule Act, D.C.Code § 1–242(3) (1981), and the savings clause of the District's Comprehensive Merit Personnel Act, D.C.Code § 1–602.4(a) (1981). The Superior Court entered an order granting Mr. Hunt $21,010.69 in legal fees, including attorney's fees for litigating a contempt motion that was denied following an evidentiary hearing. This appeal by the District followed. We affirm in part, except that we vacate that portion of the order granting attorney's fees for the unsuccessful contempt motion and remand for appropriate modification of the trial court order.

I

This case arose on September 23, 1981, when DHS terminated Mr. Hunt from his duties as an Institutional Counselor at the Cedar Knoll juvenile facility, based on charges that he assaulted several juveniles at the facility. Mr. Hunt, an employee since 1976, appealed his termination to OEA. On August 19, 1982, OEA entered a default judgment against DHS and ordered it to reinstate Mr. Hunt with back pay on the ground that DHS had failed to defend the appeal. DHS sought reconsideration of that decision in an internal agency appeal; OEA denied reconsideration on September 21, 1982. OEA also denied Mr. Hunt's request for attorney's fees in these orders.

Both DHS and Hunt petitioned for review of the OEA decision in the Superior Court. DHS sought reversal of the OEA decision and a remand to OEA with instructions to decide the case on the merits. Mr. Hunt cross-appealed the OEA's denial of attorney's fees. On December 1, 1982, the Superior Court (Bowers, J.) denied the District's appeal, upheld the OEA decision, and ordered Mr. Hunt's immediate reinstate-

---

1. D.C.Code § 1–606.3(d) (1981) provides the Superior Court with jurisdiction to hear appeals from the OEA in cases under the CMPA.

ment with full back pay. The District complied on December 6, 1982, but reassigned Mr. Hunt to an administrative position. Mr. Hunt then moved to hold the District and the Director of DHS in contempt of court, alleging that the reassignment was in violation of the court's December 1 order affirming the OEA decision.[2] On February 16, 1983, after an evidentiary hearing, the trial court denied the motion, finding that the director of DHS had not acted unreasonably in placing Mr. Hunt in an administrative position, and that the reassignment was within management discretion. On May 30, 1983, however, Mr. Hunt was reassigned to a caseload as a juvenile community counselor.

Subsequently, the Superior Court (Hamilton, J.) heard oral argument on Mr. Hunt's petition for attorney's fees. On May 24, 1984, the court issued a written decision, holding that he was entitled to attorney's fees for both the action on the underlying discharge as well as the contempt motion.

## II

### Statutory Framework

In the 1973 Home Rule Act, Congress directed the District government to establish its own comprehensive personnel system to replace the federal system which previously controlled. Congress was careful, however, to ensure that the rights of existing District employees would be protected during the transition to home rule. D.C.Code § 1–242(3) (1981) states in pertinent part:

Personnel legislation enacted by Congress prior to or after January 2, 1975, including, without limitation, legislation relating to appointments, promotions, discipline, separations, pay, unemployment compensation, health, disability and death benefits, leave, retirement, insurance, and veterans' preference applicable

to employees of the District government ... shall continue to be applicable until such time as the Council shall, pursuant to this section, provide for coverage under a District government merit system.... The system may provide for continued participation in all or part of the Federal Civil Service System and shall provide for persons employed by District government immediately preceding the effective date of such system personnel benefits, including but not limited to pay, tenure, leave, residence, retirement, health and life insurance, and employee disability and death benefits, all at least equal to those provided by legislation enacted by Congress, or regulation adopted pursuant thereto, and applicable to such officers and employees immediately prior to the effective date of the system established pursuant to this Act.

Pursuant to this congressional mandate, the District Council adopted the CMPA on October 31, 1978, and it became effective on March 3, 1979. The CMPA contains a savings clause which implements the directive of § 1–242(3) that certain personnel benefits are to remain "at least equal to" those established under the former Federal Civil Service System. D.C.Code § 1–602.-4(a) (1981) provides:

Persons employed by the District of Columbia government serving on the date this chapter becomes effective ... shall be guaranteed rights and benefits at least equal to those currently applicable to such persons under provisions of personnel law and rules and regulations in force on the date immediately prior to the date that this chapter becomes effective....

At the time Mr. Hunt was hired in 1976, and at all times prior to the effective date of the CMPA, the Federal Back Pay Act, 5

---

**2.** Mr. Hunt maintained that he should have been reassigned to his original position as a

U.S.C. § 5596 (1982), applied to District of Columbia government employees.[3]

Subsequent to the enactment of the CMPA, the District attempted to supersede the applicability of the Federal Back Pay Act to District employees. In its original form, the CMPA provided, at D.C.Code § 1–362.2 (1973 & Supp. VII 1980):

> The following provisions of Title V of the United States Code are superseded for employees hired by the District of Columbia government on or after the date this chapter becomes effective [4] ... U.S.C. ... 5596(a)(5) (relating to pay administration for employees of the District of Columbia government).

Section 1–362.2 has been amended and recodified at D.C.Code § 1–633.2(a)(5)(G) (1981) to extend the supersession of the Back Pay Act to all District government employees, regardless of when they were hired.[5]

### III

We have held previously that the "at least equal to" language of the Home Rule Act's carryover provision and the CMPA's savings clause, D.C.Code §§ 1–242(3) and –602.4(a) (1981), "provides a floor for benefits under the D.C.CMPA, equal to those applicable to federal employees 'immediately prior' to enactment of District personnel legislation." *American Federation of Government Employees v. Barry*, 459 A.2d 1045, 1049 (D.C.1983) (*AFGE* ). There

we attempted to set a standard for determining which previously applicable federal benefits must be retained for District government employees who were working at the time when the CMPA was implemented.

This standard recognizes a distinction between concrete statutory entitlements and benefits on the one hand and statutory processes, mechanisms or procedures used in personnel administration on the other. The District is required by § 1–242(3) to retain the federal personnel procedures, mechanisms, and processes only until it develops its own—as it did in the CMPA. However, the District must retain personnel benefits and entitlements at least equal to those previously available under the federal system, even after the CMPA went into effect. *AFGE, supra,* 459 A.2d at 1052.

The District argues that it is not required to maintain the Back Pay Act's attorney fee provision for successful employee litigants because such fees are not a concrete benefit cognizable under D.C.Code §§ 1–242(3) and –602.4(a). It therefore asserts that it was free to rescind the federal provision through supersession.

In *AFGE, supra,* we concluded that the District did not have to retain a federal pay comparability formula, which set standards and procedures for potential cost-of-living pay adjustments, but was free to supersede

---

counselor at Cedar Knoll.

**3.** 5 U.S.C. § 5596 provided in relevant part (and continues to provide after amendment immaterial to this case):

> Back pay due to unjustified personnel action
> (a) For purposes of this section, "agency" means—
> \* \* \* \* \* \*
> (5) the government of the District of Columbia.
> (b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority ... to have been affected by an unjustified or unwarranted personnel action ...—
> (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

> \* \* \* \* \* \*
> (ii) reasonable attorney's fees related to the personnel action....

**4.** D.C.Code § 1–366.1 (1973 & Supp. VII 1980) provided that this chapter was effective January 1, 1980.

**5.** This section now provides:
> (a) The following provisions of the United States Code are superseded for all employees of the District of Columbia Government:
> \* \* \* \* \* \*
> (5)(G) 5 U.S.C. [§] 5596(a)(5).

On July 29, 1980, the City Council adopted this enactment. The Mayor signed the Bill on August 1, 1980, and it became effective on September 26, 1980, at the end of the congressional review period.

it and adopt its own in the CMPA. We reached this conclusion by finding that such a process or mechanism was not a concrete entitlement, such as pay, tenure and leave. Instead, we found that such a process implicated precisely the kind of administrative autonomy that Congress intended the District to now exercise in the Home Rule Act. *Id.* at 1051, 1053. We were careful to point out that the "at least equal to" language of §§ 1–242(3) and –602.4(a) does not require a "carbon copy" of all former federal personnel processes, and we therefore recognized that the District's alternative CMPA pay comparability provision was an acceptable substitute for the former federal formula. *Id.*

We find the District's attempted supersession of the Back Pay Act to represent a different circumstance. First, we conclude that the attorney's fees provision of 5 U.S.C. § 5596 is not an administrative process or mechanism but is instead a concrete personnel entitlement or benefit that the District must retain, or replace with an equivalent alternative pursuant to D.C. Code §§ 1–242(3) and –602.4(a). There is no District process involved in the calculation or award of such fees. Rather, they are merely a restitutionary form of compensation for employees who are forced to litigate District personnel actions later determined to be improper. Such a benefit merely returns these employees to the position they would have occupied if such improper action never took place.

■ The District therefore cannot supersede the Back Pay Act as applied to pre-January 1, 1980 [6] employees, since there is no current back pay provision in the CMPA to replace it. The District has recognized on several occasions that the Back Pay Act

must remain in force until a replacement is found. Mayor's Memorandum, Number 81–53, July 17, 1981, at 2; Memorandum of the Corporation Counsel, July 15, 1981, at 2. However, the District now apparently attempts to argue that it may selectively supersede those portions of the act relating to attorney's fees. It may not do so until such benefits are replaced with equivalent alternatives in the CMPA for these pre-1980 employees, who previously enjoyed the federal entitlement. D.C.Code §§ 1–242(3), –602.4(a) (1981).

It is, therefore, clear that the portion of the Superior Court's decision upholding Mr. Hunt's right to attorney's fees for his reinstatement action was proper, since this award was clearly authorized under the Back Pay Act,[7] and the Act remains in force for such employees until an alternative District scheme is enacted to replace it.

## IV

■ The District also challenges the Superior Court's award of attorney's fees for the subsequent contempt motion. The District argues that Mr. Hunt is not entitled to counsel fees incurred in litigating this motion because he did not prevail on that motion. We agree.

■ This court generally defers to the broad discretion of the trial judge in the calculation and award of attorney's fees. *American Federation of State, County and Municipal Employees v. Ball,* 439 A.2d 514, 515 (D.C.1981); *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 38 (D.C.1979). To be entitled to such attorney's fees, however, a party must be authorized to receive them by operation of statute or contract.[8]

---

6. This is the effective date of the original supersession act, *see supra* note 4. We also point out that although this first supersession act was aimed at pre-January 1, 1980 employees such as Mr. Hunt, the second supersession act cannot alter the result we reach, because as applied to these employees, it is also contrary to D.C.Code §§ 1–242(3) and –602.4(a).

7. It is the well settled American Rule that attorney's fees are generally not available unless there exists an explicit statutory or contractual entitlement. *See Aleyska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 249, 95 S.Ct. 1612, 1618, 44 L.Ed.2d 141 (1975); *In re Antioch University,* 482 A.2d 133, 135 (D.C.1984).

8. *See supra* note 7.

Here, the authorizing statute, the Back Pay Act, sets out the standard as follows: "attorney's fees ... shall be awarded in accordance with standards established under section 7701(g) of this title." 5 U.S.C. § 5596(b)(1)(A)(ii) (1982). Section 7701(g) provides that a party may receive reasonable attorney's fees "if the employee or applicant is the prevailing party ... and if the payment ... is warranted in the interest of justice." Appellee Hunt fails to meet this standard since he did not prevail in the contempt proceeding. The motion was denied.

The Superior Court, after conducting an evidentiary hearing, rejected each of appellee's asserted legal bases for the motion.[9] Yet the court below awarded the fees for the motion because it found that the contempt proceeding involved a common core of facts which flowed directly from Mr. Hunt's successful reinstatement action, and that the matters related to the contempt motion were not distinct from Mr. Hunt's successful claims.

The Supreme Court has recently addressed a similar problem in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[10] There the Court held that recovery of legal fees depended in large part on the extent of a party's success. *Id.* at 440, 103 S.Ct. at 1943. Where the party is deemed "prevailing" even though he succeeds on only some of his claims for relief, two questions must be answered in order to determine whether he should recover for the unsuccessful claims:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* at 434, 103 S.Ct. at 1940.

Applying these factors to the contempt action, the second question is clearly answered in the negative. As pointed out above, Mr. Hunt's contempt motion was denied on all legal theories advanced. He therefore failed to meet the "prevailing party" standard set forth in the Back Pay Act, although he did prevail on his cross-appeal of the OEA decision.[11] The first question is therefore controlling; here the motion was not significantly related to appellee's successful cross-appeal of the OEA order.

In its petition for review, the District sought to have the Superior Court hear the merits of the case after the OEA entered a default against it for failure to defend Mr. Hunt's appeal. Mr. Hunt cross-appealed to reverse the OEA's denial of attorney's fees. The contempt motion, however, only involved the propriety of DHS's subsequent decision to reassign Mr. Hunt to a different position than the one he originally had. The motion sought relief including an injunction, contempt adjudication, and fines. It had nothing to do with the issues in the cross-petitions for review of the OEA decision—default judgment and attorney's fees. It simply concerned whether Mr. Hunt's alleged history of assaultive behav-

9. Judge Bowers rejected Hunt's basic assertion that the OEA decision exonerated him from the allegations of misconduct, noting that the decision was a default judgment. He also rejected the contentions that the OEA decision precluded DHS from considering the incidents that triggered the termination, that the reassignment of Hunt was a second adverse action, and that the OEA decision had *res judicata* and collateral estoppel effect on the contempt motion.

10. Although *Hensley* involves a fee award made pursuant to 42 U.S.C. § 1988 (1982), the Court points out that the standards set forth in its opinion "are generally applicable in all cases in

which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7.

11. Mr. Hunt asserts that his contempt motion, although legally denied, in fact won him reappointment as a counselor, and that he therefore should be presumed to have met the prevailing party standard. We point out that while Mr. Hunt was reassigned to a counselor position, this reassignment took place a substantial time after the motion, and was not the reassignment he requested at the time of the motion, *i.e.,* his original position at Cedar Knoll.

ior could form a proper basis for his reassignment.

Given that the failed motion was not significantly related to and in no way advanced Mr. Hunt's successful cross-appeal of the OEA decision, we find that the unsuccessful claim "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved'." *Id.* at 435, 103 S.Ct. at 1940. Therefore, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable attorney's fee." *Id.* at 440, 103 S.Ct. at 1943. Since it is unclear from the record the precise amount granted for this unsuccessful motion, we remand the case to the Superior Court with instructions to delete this portion from the award.

### Conclusion

The order of the Superior Court is

*Affirmed in part and remanded for actions consistent with this opinion.*