**Vartan ZENIAN, Appellant,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, Appellee.**

No. 90–1007.

District of Columbia Court of Appeals.

Argued Sept. 12, 1991.
Decided Nov. 6, 1991.

---

Michael L. Spekter, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before FERREN, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

The question presented is whether counsel fees may be awarded to an employee, whom the District of Columbia hired after January 1, 1980, and who has successfully contested an adverse personnel action against him before the Office of Employee Appeals (OEA) and the Superior Court. We hold that they may.

## I

On June 21, 1981, appellant Vartan Zenian began his employment as a financial auditor with the Office of the D.C. Auditor. On January 4, 1985, he was dismissed for alleged inefficiency, insubordination, and dishonesty.[1] He filed a timely appeal with the OEA. On September 30, 1986, almost twenty-two months later, an OEA hearing examiner found that Mr. Zenian had engaged in insubordination, but held in Mr. Zenian's favor with regard to the allegations of inefficiency and dishonesty. The hearing examiner ruled that the appropriate sanction was a five-day suspension. Neither Mr. Zenian nor the Auditor filed a petition for review with the OEA, and the decision became final on October 16, 1986.

The Auditor appealed the OEA's decision to the Superior Court and, on February 10, 1987, Judge Eugene Hamilton affirmed it. Mr. Zenian was ordered reinstated and awarded back pay for the period that he was unemployed.

Mr. Zenian then requested the OEA to award him $16,439.90 in counsel fees. On September 22, 1989, the hearing examiner declined to make such an award, holding that she lacked statutory authority to do so. She relied on *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) and *Launay v. Launay*, 497 A.2d 443 (D.C.1985). On September 21, 1989,[2] the Board issued an order stating simply that "Employee's request for attorney fees is denied."

Mr. Zenian next sought review of the OEA's decision in the Superior Court. On July 16, 1990, that court issued a written Memorandum Opinion and Order affirming the OEA's decision. The judge held that she had no statutory authority to award counsel fees, and was constrained from making such an award by the "American Rule" as applied in our then very recent decision in *Schlank v. Williams*, 572 A.2d 101, 108 (D.C.1990). Citing *Freeman v. District of Columbia Dep't of Employment Servs.*, 568 A.2d 1091, 1093 (D.C.1990), the judge also held that the OEA's decision was neither plainly errone-

---

**1.** The record before us discloses little or nothing about Mr. Zenian, his alleged transgressions, or his substantial but incomplete vindication.

**2.** No explanation has been provided for the unusual fact, presumably attributable to clerical error, that the "Recommended Order" carries a "Date of Issuance: September 22, 1989" but that the "Board Order" attached thereto is dated September 21, 1989.

ous nor otherwise contrary to established legal doctrine. This appeal followed.

## II

The rights of District of Columbia employees in personnel actions arising out of their employment are governed by the Comprehensive Merit Personnel Act (CMPA), D.C.Code §§ 1–601.1 to 1–637.2 (1987). The CMPA was designed to replace an existing personnel system which was said to be in "disarray" and "chaos"—an " 'inefficient hodge-podge system [that] ignore[d] the rudimentary merit rules' and 'awkwardly meshed' the District personnel apparatus with the federal personnel system." *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C.1991) (quoting COUNCIL OF THE DISTRICT OF COLUMBIA, DISTRICT OF COLUMBIA COMPREHENSIVE MERIT PERSONNEL ACT OF 1978, COMM. REPORT ON BILL NO. 2–10, at 26 (July 5, 1978)) (insertions in original). The state of the law under the CMPA, however, has yet to become a model of luminous clarity.

Prior to the effective date of the CMPA,[3] the Federal Back Pay Act (FBPA), now codified at 5 U.S.C. § 5596 (1988), applied to all employees of the District of Columbia government. *Id.* § 5596(a)(5); *District of Columbia v. Hunt*, 520 A.2d 300, 302–03 (D.C.1987) (*Hunt I*).[4] The CMPA purported to supersede the FBPA as to District employees.[5] Insofar as this attempted supersession applied to employees hired prior to January 1, 1980, it ran afoul of the Home Rule Act, D.C.Code § 1–242(3) (1987), which "provide[s] a floor for benefits under the [C.M.P.A.], equal to those applicable to federal employees immediate-

ly prior to enactment of District personnel legislation." *Hunt I, supra*, 520 A.2d at 303 (citation and internal quotation marks omitted); *see American Fed'n of Gov't Employees v. Barry*, 459 A.2d 1045, 1049 (D.C.1983).

The critical development in this case, ignored by the hearing examiner, the OEA, and for all practical purposes by the trial court, is that effective March 4, 1981, the CMPA was amended by D.C.Law 3–130, 1979–1980 D.C.Stat. 544, now codified at D.C.Code § 1–612.4 (1987). Law 3–130 requires the Mayor to develop a new compensation system for all employees in the Career and Excepted Services. D.C.Code § 1–612.4(a) (1987). The statute further directs, subject to a proviso not here relevant, that

> [u]ntil such time as a new compensation system is approved, the compensation system, including the salary and pay schedules, in effect on December 31, 1979, shall continue in effect.

*Id.* § 1–612.4(e).

Because the entire period of Mr. Zenian's employment with the District took place after March 4, 1981, the effective date of Law 3–130, any eligibility for counsel fees which he may have depends on the effect of that statute. Because Law 3–130 "jumps back" to the end of 1979, Mr. Zenian, in order to recover his counsel fees, must have been eligible to do so under the "compensation system" in effect on December 31, 1979. It is undisputed that on that date, the day immediately preceding the effective date of the relevant CMPA provisions, the rights of District of Columbia

---

**3.** Although the CMPA became law on March 3, 1979, *see* D.C.Law 2–139, 1978 D.C.Stat. 455, many of its provisions did not become effective until January 1, 1980. *Id.* § 3602. One such provision was § 3202(a)(7), pursuant to which several statutes, including the Federal Back Pay Act, 5 U.S.C. § 5596(a)(5), were superseded for District employees. *See* D.C.Law 2–139, at § 3602(p)(1), 1978 D.C.Stat. at 579.

**4.** A later stage of the controversy in *Hunt I* came before this court in *District of Columbia v. Hunt*, 525 A.2d 1015 (D.C.1987).

**5.** In its original form, the CMPA purported to supersede the FBPA only for those District em-

ployees hired after the CMPA became effective, *i.e.*, January 1, 1980. D.C.Law 2–139, at § 3202, 1978 D.C.Stat. 455, 561, *codified at* D.C.Code § 1–362.2 (1973 & Supp. VII 1980); *Hunt I, supra*, 520 A.2d at 303. In 1980, the Council of the District of Columbia passed the Independent Personnel Systems Implementation Act of 1980, D.C.Law 3–109, 1979–1980 D.C.Stat. 483, *codified at* D.C.Code § 1–633.2(a) (1987), which became effective on September 26, 1980, and purported to supersede the FBPA for *all* District employees, irrespective of date of hire. *Hunt I, supra*, 520 A.2d at 303.

employees were governed by the FBPA. *See* Memorandum of the Corporation Counsel, July 15, 1981, at 2. That Act contained an explicit provision for counsel fees.[6] The question now before this court is whether this counsel fee provision is a part of a "compensation system" as that term is used in § 1–612.4(e).

The District contends that it is not. It relies on § 1–612.4(b), which provides that "this new [compensation] system [which the Mayor is to develop] shall include, but need not be limited to, provisions for basic pay, pay increases based on quality and length of service, premium pay, allowances, and severance pay." Since counsel fees are not specifically mentioned and are different in kind from the enumerated examples, the District asks us to invoke the maxim known as *ejusdem generis*[7] and exclude counsel fees from the term "compensation system."

But as we recently noted in *Edwards v. United States,* 583 A.2d 661, 664 (D.C.1990),

Latin maxims will only take us so far, however; '[t]he crux of the matter is that the rule of *ejusdem generis* is only a constructionary crutch and not a judicial ukase in the ascertainment of legislative intention.' *State v. Small,* 99 N.H. 349, 351, 111 A.2d 201, 202 (1955).[8]

In the present case, the Council's use of the words "need not be limited to" suggests that the Council did not intend a narrow construction of the term "compensation system." "The doctrine [of *ejusdem generis*] is not a rule of substantive law: it is merely a rule of construction to be used as an aid to interpretation *when intention is not otherwise apparent.*" *Hodges v. United States Fidelity & Guar. Co.,* 91 A.2d 473, 476 (D.C.1952) (footnotes omitted and emphasis in original); 2A SUTHERLAND, *supra,* § 47.22, at 187.

The District's interpretation is, in our view, foreclosed by our decision in *Hunt I.* The question in that case was whether a District employee hired prior to January 1, 1980, may recover counsel fees after successfully litigating a personnel action. The District contended that he could not, because the FBPA had been superseded by the CMPA, and because counsel fees were not a concrete benefit which the Council was required to preserve under the Home Rule Act. In examining the character of the FBPA's counsel fee provision, we distinguished between "concrete statutory entitlements and benefits on the one hand and statutory processes, mechanisms or procedures used in personnel administration on the other." *Hunt I, supra,* 520

**6.** As we explained in *Hunt I, supra,* 520 A.2d at 303 n. 3:

5 U.S.C. § 5596 provided in relevant part (and continues to provide after amendment immaterial to this case):

Back pay due to unjustified personnel action

(a) For purposes of this section, 'agency' means—

\* \* \* \* \* \*

(5) the government of the District of Columbia.

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by appropriate authority ... to have been affected by an unjustified or unwarranted personnel action ...—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

\* \* \* \* \* \*

(ii) reasonable attorney's fees related to the personnel action....

**7.** "Where general words follow [or precede] specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding [or following] specific words." 2A NORMAN J. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 47.17, at 166 (4th ed. 1984) (footnotes omitted) [hereinafter SUTHERLAND]. The justification for this maxim is that if the legislature intended the general words to have unrestricted meanings, it would not have included the specific words. *Id.*

**8.** As the Supreme Court once said of the doctrine of *"respondeat superior,"* "[t]he reason for the rule is not clarified much by the Latin phrases in which it is sometimes clothed." *Standard Oil Co. v. Anderson,* 212 U.S. 215, 220, 29 S.Ct. 252, 253, 53 L.Ed. 480 (1909). *See also* Edmund M. Morgan, *A Suggested Classification of Utterances as Res Gestae,* 31 YALE L.J. 229, 234 (1922) (referring to "the marvelous capacity of a Latin phrase to serve as a substitute for reasoning.")

A.2d at 303. We concluded that counsel fees constitute a "concrete personnel entitlement or benefit that the District must retain, or replace with an equivalent alternative pursuant to [the Home Rule Act]." *Id.* at 304. We described such fees as "a restitutionary form of compensation for employees who are forced to litigate District personnel actions later determined to be improper." *Id.* We went on to hold that

> [t]he District therefore cannot supersede the Back Pay Act as applied to pre-January 1, 1980, employees, since there is no current back pay provision in the CMPA to replace it. The District has recognized on several occasions that the Back Pay Act must remain in force until a replacement is found. Mayor's Memorandum, Number 81–53, July 17, 1981, at 2; Memorandum of the Corporation Counsel, July 15, 1981, at 2. However, the District now apparently attempts to argue that it may selectively supersede those portions of the act relating to attorney's fees. It may not do so until such benefits are replaced with equivalent alternatives in the CMPA for these pre–1980 employees, who previously enjoyed the federal entitlement. D.C.Code §§ 1–242(3), –602.4(a) (1981).

*Id.* at 304.

The District has suggested that even if the FBPA in general was a part of the "compensation system" in effect on December 31, 1979, the counsel fee provisions of that act should be severed from the rest of the statute and be held not to be a part of that system. We find no reason to follow this suggestion. We held in *Hunt I* that the FBPA is not to be applied in a piece-meal fashion, and that its counsel fee provisions are an integral part of the Act as a whole and may not be severed from it. *Hunt I, supra,* 520 A.2d at 303–04.

*Hunt I* addressed the rights of employees hired prior to January 1, 1980, and its immediate focus was on the interplay between the CMPA and the Home Rule Act. Mr. Zenian was hired in 1981, and the provisions of the Home Rule Act addressed in *Hunt I* therefore have no application to him. We nevertheless conclude that the court's analysis in *Hunt I* of the character of the FBPA provision for counsel fees cannot be reconciled with the District's contention here that the right to recover such fees was not a part of the compensation system in effect on December 31, 1979.[9]

Relying on the "American Rule," which provides that in the absence of express statutory authorization, each party is ordinarily responsible for his or her own counsel fees, *see Schlank, supra,* 572 A.2d at 108, the District insists that the OEA and the trial court correctly held that no such fees could be awarded in this case. It is true that the CMPA makes no express mention of counsel fees as such. Section 1–612.4(e), however, explicitly incorporates by reference the "compensation system ... in effect on December 31, 1979," which, as we have seen, includes the FBPA. The FBPA, moreover, contains an express provision for counsel fees, and we have held that this provision was part of the December 31, 1979, compensation system. We

---

**9.** The District invites our attention to *Payne v. Panama Canal Co.,* 607 F.2d 155, 163–64 (5th Cir.1979), in which the court held that the FBPA's counsel fee authorization applied only to unfair labor practices or to certain specified grievances. This suggests, according to the District, that when the Council effectively incorporated the compensation system in effect on December 31, 1979, it intended to adopt the FBPA *as then construed—i.e.,* without counsel fees for prevailing parties like Mr. Zenian.

We entertain considerable doubt, however, that the Council was influenced, in adopting Law 3–130, by a specific early construction of the FBPA by an appellate court in another jurisdiction. A more probable legislative design was to incorporate by reference the statute and, with it, whatever interpretation of it may be deemed to be correct by the courts of this jurisdiction. We note in this connection that the United States Court of Appeals for the District of Columbia Circuit has held that the language of the FBPA "is sufficiently broad to include attorney's fees for services rendered in administrative or judicial appeals undertaken by an employee to obtain correction of 'an unjustified or unwar-

are of the opinion that this meets the requirements of *Schlank* and *Alyeska*.[10]

Finally, the District asks us to defer to the OEA's expertise in interpreting its own statute. Superior Court Agency Review Rule 1(g) provides that the court "shall not set aside the action of the agency if supported by substantial evidence in the record as a whole *and not clearly erroneous as a matter of law*." (Emphasis added.) We agree with the principle, but not with its proposed application here.

The Superior Court Rule on which the District relies is no more than a restatement of familiar legal doctrine. As we recently reiterated in *McCulloch v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 1244, 1248 (D.C.1991), courts must defer to an agency's interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with its legislative purpose. The corollary of this proposition, however, is that "we are not obliged to stand aside and affirm an administrative determination which reflects a *misconception of the relevant law* or a faulty application of the law." *Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 169 (D.C.1979) (emphasis added). "An order may not stand if the agency has misconceived the law." *Committee for an Indep. P–I v. Smith,* 549 F.Supp. 985, 989 (W.D.Wash.1982); *see also Public Employees Retirement Sys. v. Betts,* 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989).

In many instances, a "misconception of the relevant law," like beauty or the lack thereof, lies in the eye of the beholder. In this case, however, we think that the existence of such a misconception can be demonstrated by more objective means. The OEA wrote no opinion in this case, but simply affirmed the decision of the hearing examiner. In that decision, the examiner held that she was without statutory authority to award counsel fees, but never addressed, considered, or even cited the provisions of § 1–612.4(e)—the sole statute, so far as we are aware, on which a finding of such authority could reasonably be predicated. Since neither the examiner nor the OEA construed this statute, there is simply no administrative construction to which this court might accord any weight.[11]

### III

For the foregoing reasons, the decision of the trial court is reversed. The case is remanded to the trial court with directions to vacate the decision of the OEA and to remand the case to the OEA for further proceedings consistent with this opinion.

*So ordered.*[12]

---

ranted personnel action.' " *Hoska v. United States Dep't of Army,* 224 U.S.App.D.C. 150, 153, 694 F.2d 270, 273 (1982) (footnote omitted).

**10.** Our construction of the CMPA and § 1–612.-4(e) is consistent with the intent of Congress and the Council to provide as comprehensive a system of employee rights and entitlements as possible. *See Thompson, supra,* 593 A.2d at 632–33. Because many of the individuals who stand to benefit from back pay and merit personnel provisions are relatively low-level government employees who may have difficulty affording the costly procedures involved in challenging an unlawful termination, a construction of the CMPA which would bar awards of counsel fees to successful employee litigants would have the potential of substantially chilling the private enforcement of legal workplace rights. We do not think that Congress or the Council could have intended such a result, especially

since the FBPA's explicit authorization for such "make whole" relief has been effectively incorporated by reference.

**11.** In upholding the OEA's decision in this case, the trial judge was under the impression that D.C.Law 3–130, now codified as § 1–612.4, was "emergency legislation" which "is only valid for 90 days," and that it had expired before Mr. Zenian was hired. As a result of this factual misapprehension, the judge had no occasion to construe the statute which we view as dispositive.

**12.** We note that the result which we have reached in this case is consistent with the decision of Honorable Henry H. Kennedy, Jr., in *Raimist v. District of Columbia Dep't of Pub. Works,* C.A. No. 9–89–MPA (Super.Ct.D.C. Oct. 19, 1990). As Judge Kennedy succinctly reasoned in *Raimist,*

D.C.Code § 1–612.4(e) was enacted to provide a compensation system for D.C. employees pending submission by the Mayor of a new compensation plan. It became effective on March 4, 1981, two months before the petitioner began his employment with the District. In pertinent part, it provides:

Until such time as a new compensation system is approved, the compensation system, including the salary and pay schedules, in effect on December 31, 1979, shall continue in effect....

On December 31, 1979, the Back Pay Act was part of the compensation system in effect, and

remained in effect as of the time the petitioner began his employment and was improperly fired. Therefore, contrary to OEA's view, it has statutory authority to award attorney's fees and costs in appropriate cases.

Memorandum Opinion at 3–4.

