MUSHROOM TRANSPORTATION & National Union Fire Insurance Company of Pittsburgh, Petitioners,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 95–AA–730.

District of Columbia Court of Appeals.

Argued June 3, 1997.
Decided July 17, 1997.

Kelly D. Vanstrom, with whom Michael S. Levin, Columbia, MD, was on the brief, for petitioners.

Martin B. White, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY and KING, Associate Judges, and MACK, Senior Judge.

KING, Associate Judge:

In this petition we are asked to reject an interpretation of ambiguous language in the Workers' Compensation Act[1] ("Act") in a provision relating to the reduction of workers' compensation benefits when the employee receives other benefits from certain other sources. Because this case reaches us through the default provisions of D.C.Code § 36–322(b) (1997 Repl.),[2] and because the construction of the statutory provision by the Department of Employment Services ("DOES") hearing examiner is inadequate to serve our purposes, we remand the case to the agency for an authoritative interpretation of the provision in light of the language of the statute, its legislative history, and DOES precedent.

## I.

This appeal centers on the interpretation of the following provision:

In no event shall the total money allowance payable to an employee or his dependent survivor(s): (1) As compensation for an injury or death under this chapter; (2) as federal old age, and survivors insurance benefits; and (3) *from employee benefit plans subject to [ERISA]* [3] *and such income maintenance plans solely funded by the employer* (computed weekly) exceed in the aggregate the higher of 80% of the employee's average weekly wage or the total of federal payments and employee benefit plans payments. In the event the total aggregate money allowance payable to an employee or his survivor(s) exceeds this limitation, the amounts otherwise payable as compensation or death benefits under this chapter shall be reduced accordingly.

D.C.Code § 36–308(9) (1997 Repl.) (emphasis added). The employer argues that the italicized language requires a reduction in benefits when the employee receives money from either an employment benefit plan subject to ERISA or any income maintenance plan solely funded by the employer.[4] The hearing examiner ruled, however, that the two provisions must be read together, which results in a reduction of benefits only where the employee receives payment from an employee benefit plan subject to ERISA that is also solely funded by the employer.

## II.

This dispute arose under the following circumstances. Ira D. Scott worked for Mushroom Transportation ("Mushroom") as a truck driver when he suffered a work-related injury on June 12, 1985. In its Compensation Order of April 7, 1988, DOES determined that Scott's injury created a permanent total disability and ordered Mushroom to pay permanent total disability benefits to Scott. After the Compensation Order was affirmed by the Director of DOES on June 5, 1990, Mushroom commenced paying Scott at the compensation rate of $299.52 (per week), as provided in the April 7 order.

Scott had been a member of Teamsters Union Local 639 for twenty-seven years at the time of the April 7, 1988, Compensation Order. During this period, Scott made regu-

---

1. District of Columbia Workers' Compensation Act of 1979, codified at D.C.Code §§ 36–301 *et seq.* (1997 Repl.).

2. D.C.Code § 36–322(b) (1997 Repl.) allows a party to petition this court for review where the petitioner files an Application for Review of the hearing examiner's decision with the agency director but the director does not act on the application within forty-five days of its filing.

3. The Employee Retirement Income Security Act of 1974, codified at 29 U.S.C. §§ 1001 *et seq.*

4. Although not applicable here, it is implicit in the employer's argument that benefits would be reduced if the employee receives payments from both an ERISA-governed benefit plan and an employer-funded maintenance plan.

lar payments to the union for deposit in a pension fund. The hearing examiner found that each employer Scott worked for during his union membership had also made contributions on his behalf to the union's pension fund. At the time of his injury on June 12, 1985, Scott had worked for Mushroom for three years, and Mushroom made contributions to Scott's union pension fund for that period. The hearing examiner found, and Mushroom does not contend otherwise, that the union fund "is a union retirement benefit plan which is not solely funded by [Mushroom Transportation]." In addition, although there was no explicit finding on the point, the hearing examiner assumed that the union pension plan was subject to the provisions of ERISA. Neither party contends otherwise.

After being notified by the union on September 25, 1988, that he was eligible for a union pension, Scott selected a pension option which entitled him to receive monthly retirement benefits, effective October 1, 1988, which was payable for the remainder of his life. In late 1992, Mushroom became aware of Scott's union retirement benefits and, together with its insurer, National Union Fire Insurance Company of Pittsburgh (collectively "petitioners"), petitioned DOES for a formal hearing, which was held on November 9, 1993, to address the issue of "[w]hether the provisions of D.C.Code § 36–308(9) allow or require [Scott's] compensation benefits to be reduced based upon his receipt of pension and/or federal old age benefits."

■ Petitioners asserted that, if section 36–308(9) allowed or required a reduction in Scott's disability benefits, then they were entitled to an overpayment credit of approximately $53,000, to be charged against future payments to Scott, along with an overall reduction of their disability compensation obligation as established by the April 7, 1988, Compensation Order. The hearing examiner, without any analysis of the governing provision, and relying principally on *Shaner v. W.A. Chester, Inc.*, H & AS No. 89–140, OWC No. 5433 (April 2, 1993), a decision by the Director of DOES, ruled that petitioners were not entitled to a credit because Scott's union pension plan was not funded solely by

Mushroom, and credit is not available under section 36–308(9) unless the pension benefits are received from a plan that is both subject to ERISA and solely funded by the employer. Because we conclude that *Shaner* was not authoritative precedent on the precise issue presented here, and because the Director has never decided this question, we remand the case for further proceedings consistent with this opinion.

**III.**

■ Ordinarily we give considerable deference to an administrative agency's interpretation of a statutory provision it administers. As we stated in *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95 (D.C.1988):

> This court will uphold the agency's interpretation of [the District of Columbia Workers' Compensation Act] unless the interpretation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. . . . [W]e defer to a reasonable construction of the statute made by the agency. . . . The agency's interpretation of the statute it administers is binding on this court unless it conflicts with the plain meaning of the statute or its legislative history. . . . Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance.

*Id.* at 97 (citations omitted). Under certain circumstances, however, that deference will not always be accorded. For example, in *Harris v. District of Columbia Office of Worker's Compensation*, 660 A.2d 404 (D.C. 1995), we held that, where the hearing examiner interpreted a workers' compensation statutory provision but the Director had not passed upon the question presented, we will accord a lesser degree of deference to the hearing examiner's statutory interpretation. "We conclude that this circumstance reduces in some measure the deference which we should accord to the agency's construction." *Id.*, at 407. Here, as in *Harris*, the Director did not pass on the question presented in this

appeal, and we are left with only the hearing examiner's interpretation. Although the hearing examiner in this case did rely upon the purported holding of *Shaner,* a case that was decided by the Director of DOES, greater deference is not due because, as we discuss below, *Shaner* did not decide the issue presented here.

██ Furthermore, we are not inclined to defer to an agency interpretation where, as here, there is nothing in the record indicating, apart from her reliance on *Shaner,* that the hearing examiner conducted any analysis of the language, structure, or purpose of the statutory provision. As we stated in *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896 (D.C.1995), "[i]t would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed." *Id.* at 899–900.

### IV.

As we have said, the hearing examiner relied upon the Director's decision in *Shaner.* In that case the employer sought review before the Director of a determination by a hearing examiner that credit under section 36–308(9) was not available even though benefits from two separate pension plans were also being received by the employee. Although the basis for doing so was not explained in the Director's opinion, the hearing examiner had held that credit was available only where the pension plan was both subject to ERISA *and* funded solely by the employer. The hearing examiner also ruled that in order to satisfy the "funded solely by the employer" condition, the plan must be funded entirely by the current employer. Because the hearing examiner found that, in addition to contributions made by the current employer, other employers had contributed to the employee's pension plans, the current employer was not entitled to a credit. In its appeal to the Director, the employer only challenged that part of the hearing examiner's ruling that held that credit was not

available because the plan was funded by more than one employer. Accepting, without remark, the hearing examiner's interpretation that the statute permitted credit only for employer-funded pension plans subject to ERISA, the Director affirmed the hearing examiner's single-employer ruling.

██ Because the Director in *Shaner* was not asked, and therefore did not decide, whether the statutory provision should be interpreted in the way the hearing examiner has construed the provision here, *Shaner* is not controlling because "[t]he rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." *Murphy v. McCloud,* 650 A.2d 202, 205 (D.C.1994) citation omitted. "A point of law merely assumed in an opinion, not discussed, is not authoritative." *Id.* Because the Director only assumed, but did not decide, that the interpretation made by the hearing examiner in that case controlled the issue, *Shaner* cannot be relied upon as authoritative on the question of whether, for credit to be available, the benefit plan must be both subject to ERISA and funded solely by the employer. Therefore, there is no agency, as opposed to an individual hearing examiner, interpretation of the governing statute to which to give deference. *See Harris, supra.*

### V.

On remand, we suggest that the agency, in interpreting this provision, consider, among other factors, the legislative history of the Act, including the report by the Committee on Housing and Economic Development which states, *inter alia,* that:

> The Bill provides that compensation benefits are to be reduced if the total amount of money received from Workers' Compensation benefits, from social security, from employee benefit plans, and from employer funded income maintenance plans, taken as a whole, exceed 80% of the employee's average weekly wage or the total of federal payments received by the employee. Thus, assuring that no claim-

ant will receive more money for not working than he earns while working.

COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979, Bill 3–106, at 12 (Jan. 29, 1980). Although this language would appear to treat "employee benefit plans" as an income category separate and distinct from "employer funded income maintenance plans solely funded by the employer," any determination of the meaning of that language should be made, in the first instance, by the agency.[5]

## VI.

The decision of the hearing examiner denying petitioners a credit or a reduction in their workers' compensation benefits to Scott because Mushroom Transportation did not solely fund Scott's union pension plan is reversed, and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

---

5. The agency should also explore the frequency with which employee retirement benefit plans subject to ERISA are also funded solely by the employer. The fact that such plans are rare, or quite common, may shed some light upon the meaning of the statutory provision.