Carole Y. PROCTOR, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

**General Conference of Seventh–Day Adventists, et al., Intervenors.**

**No. 97–AA–1842.**

District of Columbia Court of Appeals.

Argued Jan. 7, 1999.
Decided Sept. 9, 1999.

Thomas Teodori for petitioner. Steven C. Rohan and Benjamin T. Boscolo were on the brief for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom John M. Ferren, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Kerry Shanahan McGeever, with whom Donald P. Maiberger was on the brief, for intervenors.

Before TERRY and REID, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

Petitioner, Carole Proctor, seeks review of a decision of the Department of Employment Services ("DOES") denying her claim for workers' compensation as untimely. According to Proctor, the hearing examiner's finding that she was on notice that her employer, the General Conference of Seventh Day Adventists ("Gencon"), had

filed a report of her injury was not supported by substantial evidence. She claims that she was not aware that Gencon had filed the report until the day she submitted her claim to DOES. Relying on our decision in *Harris v. District of Columbia Dep't of Employment Services*, 592 A.2d 1014 (D.C.1991) (*"Harris I"*), she argues that the one-year statute of limitations for workers' compensation claims, D.C.Code § 36–314(a) (1997), was tolled until she had notice that Gencon had filed the injury report with DOES.[1]

■ We agree with petitioner that the hearing examiner's finding that she had notice that Gencon had filed a report of injury shortly after the accident was not supported by substantial evidence in the record. ·We remand the case to the Director of DOES, however, to determine a different issue. In rendering their decisions, both the hearing examiner and the Director of DOES relied on *Harris I*, in which we held that the one-year statute of limitations under the District of Columbia Workers' Compensation Act ("WCA"), D.C.Code § 36–314(a), does not begin to run until a copy of the employer's injury report is sent to the injured employee.[2] However, neither the Director, the hearing examiner, nor the parties showed any awareness that *Harris I* had been vacated in *Harris v. District of Columbia Dep't of Employment Services*, 648 A.2d 672 (D.C. 1994) (*"Harris II"*), three years before the hearing examiner issued the compensation order in this case. Because our decision in *Harris I* was no longer binding on the agency, the Director erred when she relied on that decision without at least noting that it had been vacated and without explaining why she had nevertheless adopted the reasoning of *Harris I*. We therefore remand the case to the Director to decide *de novo* whether the reasoning in *Harris I*

is correct and to provide an explanation of her decision in Ms. Proctor's case. If the Director independently adopts the reasoning of *Harris I*, then this case must go back to the hearing examiner to determine when Ms. Proctor had notice of Gencon's report.

I

In April of 1988 Ms. Proctor worked as a clerk-secretary for Gencon. As she was leaving work on April 22, Ms. Proctor tripped on a metal grate on her way to the parking lot. She twisted her right knee and right ankle as she fell to the ground and visibly lacerated her left knee. She also injured her right hand and back in the fall.

Either that same day or the next business day, Ms. Proctor informed a member of Gencon's personnel department, Jenny Stevenson, of the fall and the injuries she sustained. On May 2 Ms. Stevenson completed a report of the injury and filed it with DOES. The report contained a signature purporting to be Ms. Proctor's, but at the hearing Proctor denied that she had signed it. According to Proctor, Ms. Stevenson did not tell her anything about filing a claim for workers' compensation.

From the date of the fall until May 24, 1990, when Ms. Proctor's treating physician released her from his care, Gencon made voluntary payments for medical benefits. However, after May 24, Ms. Proctor continued to experience pain in her right knee and lower back which she attributed to the fall. When she sought treatment for the pain, Gencon refused to pay the additional medical expenses.

Several months later Ms. Proctor sought the services of an attorney, Deborah Fa-

---

1. Petitioner raised another issue in her brief but withdrew it at oral argument.

2. Despite his reliance on *Harris I*, the hearing examiner nonetheless held that Ms. Proctor's claim was untimely because he found that Ms.

Proctor had notice of the report at the time it was filed, ten days after the accident occurred and almost three years before Ms. Proctor filed her claim for workers' compensation. The Director upheld the examiner's decision.

jer.[3] According to Proctor, she first became aware of the employer's report on March 18, 1991, when Ms. Fajer told her about it. On that same day Ms. Proctor filed her claim for workers' compensation with DOES.

At a hearing in March 1996, Ms. Proctor testified on her own behalf; Gencon did not present any witnesses. The hearing examiner in due course issued a compensation order denying Ms. Proctor's claim for benefits as untimely under D.C.Code § 36–314(a). Although he found that Ms. Proctor had not signed the employer's report of injury despite the presence of her purported signature on it, he also found that she had signed the Employee's Claim Application and the Employee's Notice of Injury, which were both filed with DOES on March 18, 1991. On the basis of the latter documents and her admission that she had seen the employer's report, the hearing examiner concluded that Ms. Proctor knew of the relationship between her injury and her employment no later than May 2, 1988, and that she therefore had until May 1, 1989, to file a claim for medical benefits. Because she did not file her claim until March 18, 1991, the hearing examiner denied it as untimely. The Director of DOES affirmed that decision. Ms. Proctor now seeks review in this court.

## II

Ms. Proctor maintains that the hearing examiner's decision was not supported by substantial evidence. She asserts that, although she did not file her claim until approximately three years after she fell,

her claim is not barred by the one-year statute of limitations[4] because she did not have notice that her employer had filed a report of the injury with DOES. She relies on *Harris I*, in which we held "that until the employee has notice that the employer's report has been filed with [DOES], the limitations period of § 36–314(a) cannot begin to run." 592 A.2d at 1017. The statute does not expressly require such notice, but we concluded that such a requirement was "consistent with the humanitarian purposes of the [Workers' Compensation] Act." *Id.*

Also relying on *Harris I*, the hearing examiner agreed with Ms. Proctor that the one-year statute of limitations was tolled until she had notice that Gencon had filed the employer's report of injury with DOES. Nevertheless, the examiner held that her claim was untimely because he found that Ms. Proctor had seen the employer's report of May 2, 1988, and that she was therefore aware of the relationship between her injury and her employment no later than that day. The Director affirmed the hearing examiner's decision, finding substantial evidence in the record to support it. Like the examiner, the Director cited *Harris I* approvingly without noting that the decision had been vacated in 1994 and was no longer binding precedent. *See Harris II*, 648 A.2d at 673 (vacating *Harris I* ); *Washington Hospital Center v. District of Columbia Dep't of Employment Services*, 712 A.2d 1018, 1019 (D.C.1998) (stating that *Harris I* is no longer binding). The Director did not explain why she was relying on a decision that was no longer even in existence, nor

---

3. Ms. Proctor testified that she could not remember when she first contacted Ms. Fajer. However, in her brief she states that she first consulted with Ms. Fajer on March 18, 1991, the same day she filed her claim with DOES.

4. D.C.Code § 36–314(a) provides in pertinent part:

   Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefor is filed within one year after the injury or death. If payment

of compensation has been made without an award on account of such injury or death, a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the Mayor. The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

did she elucidate why she adopted the construction of section 36–314(a) established in *Harris I* despite having taken a contrary position when *Harris I* was originally before this court.

"We ordinarily give considerable deference to an administrative agency's interpretation of a statute that it administers," *Long v. District of Columbia Dep't of Employment Services,* 717 A.2d 329, 331 (D.C.1998) (citations omitted), and we will uphold that interpretation "unless it is plainly erroneous or inconsistent with the enabling statute." *Lee v. District of Columbia Dep't of Employment Services,* 509 A.2d 100, 102 (D.C.1986); *accord, e.g., Zenian v. District of Columbia Office of Employee Appeals,* 598 A.2d 1161, 1166 (D.C. 1991). Therefore, so long as the agency's construction is reasonable and does not conflict with the plain meaning of the statute or its legislative history, we are bound by it and "must sustain [it] even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance." *Smith v. District of Columbia Dep't of Employment Services,* 548 A.2d 95, 97 (D.C.1988) (citations omitted); *accord, Lee,* 509 A.2d at 102.

However, when it appears that the agency (or, in this case, the Director) did not conduct "any analysis of the language, structure, or purpose of the statutory provision," *Mushroom Transportation v. District of Columbia Dep't of Employment Services,* 698 A.2d 430, 433 (D.C.1997), "[i]t would be incongruous to accord substantial weight to [the] agency's interpretation." *Coumaris v. District of Columbia Alcoholic Beverage Control Board,* 660 A.2d 896, 899–900 (D.C.1995). In this case the Director did not provide any statutory analysis of section 36–314(a). She adopted our

vacated and hence non-binding construction of the statute in *Harris I* "virtually without comment and did not interpret the statute or state how it might bear" on the issues to be decided. *Long,* 717 A.2d at 332.

During oral argument, we expressed our concern about the Director's reliance on a decision that no longer has any value as precedent. In response, the Office of the Corporation Counsel, which represents DOES, filed a post-argument letter explaining that the citation of *Harris I* in the Director's decision was "an inexplicable error by the Director's office." The letter clarified that the reference to *Harris I* "should have been to the rationale and reasoning of that decision, which DOES has adopted as the agency interpretation of the limitation period governing filing workers' compensation claims." It cited, in particular, the Director's decision in *Rhodes v. Washington Hospital Center,* Dir. Dkt. No. 92–28, H & AS No. 91–765, OWC No. 0175405 (Remand Order, March 6, 1995, and Order of Clarification, September 22, 1997 [*sic* ]).[5]

In *Rhodes* the claimant, an acute care technician, was attacked and injured by a patient. His employer, Washington Hospital Center ("WHC"), voluntarily paid disability benefits for two weeks following the incident. Nearly two years later, the employee filed a claim for further disability benefits retroactive to the date on which the voluntary payments had ended. The hearing examiner denied the claim on the ground that it was barred by the statute of limitations, D.C.Code § 36–314(a). The Director reversed, concluding that the statute did not begin to run until the employer sent a copy of the injury report to the employee. *Rhodes,* Remand Order at 3. Noting that the decision in *Harris I* had been vacated, the Director nonetheless relied on *Harris I* because she "believe[d]

**5.** September 22, 1997, was the date that appeared on the Order of Clarification in *Rhodes.* That order, however, was apparently issued in response to this court's opinion in *Washington Hospital Center, supra,* which was not decided until June 11, 1998. We assume, therefore, that the correct date of the Order of Clarification is September 22, 1998.

that the Court [of Appeals] clearly expressed its feelings on this issue." *Id.* She reasoned that, although the earlier opinion was necessarily vacated because it "was advisory and resolved an issue that simply was no longer before the court," the court "in no manner ... back[ed] away from its underlying concerns and rationale on the issue of an employee receiving the injury report before the limitation period can begin to run." *Id.* On WHC's second petition for review, we remanded the case to DOES for further findings and conclusions, ruling that we did not have jurisdiction over the matter because there was no final order for us to review. *Washington Hospital Center, supra,* 712 A.2d at 1019.

The Director interpreted our decision in *Washington Hospital Center* as a request to explain why she had followed *Harris I* when she had previously taken a contrary position. She explained that she believed we had vacated *Harris I* "because the issue in that case became moot, not because of any disagreement with the underlying reasoning in the case." *Rhodes,* Order of Clarification at 2. She noted that she had adopted the reasoning in *Harris I* as persuasive in the original remand order and had consistently ruled in fifteen other cases since then that the employer must send the employee a copy of the injury report before the statute of limitations begins to run. The Director explicitly stated that she found the reasoning of *Harris I* "logical, straightforward, and persuasive. The burden on employers is slight, and yet the potential benefit to claimants is very great." *Id.* at 3.

While we appreciate the Director's explanations of her decision to adopt the interpretation set out in *Harris I,* we must nonetheless send this case back to the Director for further illumination of her reasoning. The *Rhodes* decision reflects a continued misunderstanding about an agency's role in interpreting and implementing statutes which that agency administers. The Director continues to rely on *Harris I* simply because it contained our

original interpretation of section 36–314(a). However, as Judge Kern noted in his dissent, that case was decided "upon a point none of the parties raised, much less discussed in their briefs." *Harris I,* 592 A.2d at 1019. The majority interpreted the WCA without first considering the agency's views on the issue. *Id.* at 1021. Furthermore, nowhere does the WCA state "that a failure by DOES to provide notice of an employee's obligation tolls the running of the Act's limitation on claims against employers who have complied with the Act. Nor is there legislative history to support such a construction." *Id.* at 1020 (footnote omitted).

■ Despite these concerns, the Director adopted our construction of section 36–314(a) without determining whether she would have so interpreted it in the first instance. Absent some indication that the Director considered the statutory language or the structure or purpose of the provision, we are hesitant to give her adoption of our construction substantial weight. *See Mushroom Transportation,* 698 A.2d at 433; *Coumaris,* 660 A.2d at 899–900. Since "any determination of the meaning of that language should be made, in the first instance, by the agency," *Mushroom Transportation,* 698 A.2d at 434, we refrain from deciding the matter until the Director provides a more detailed exposition of her "statutory analysis in light of the facts of this case and the broader considerations presented by the issue." *Long,* 717 A.2d at 332. If she decides to adopt the *Harris I* interpretation of the statute, she should make clear that it represents the construction she would have originally embraced even if *Harris I* had never been on the books.

### III

If the Director decides to adopt the *Harris I* construction, she must send the case back to the hearing examiner so that he may determine when Ms. Proctor first had notice of Gencon's report of the injury. We agree with Ms. Proctor that the exam-

iner's finding that she had notice of that report as of May 2, 1988, was not supported by substantial evidence.

■ This court has developed a three-part test for analyzing administrative decisions: "(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings." *Perkins v. District of Columbia Dep't of Employment Services,* 482 A.2d 401, 402 (D.C.1984). When, as in this case, there is no evidence in the record to substantiate the hearing examiner's finding, "this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Colton v. District of Columbia Dep't of Employment Services,* 484 A.2d 550, 552 (D.C.1984); *accord, e.g., Jimenez v. District of Columbia Dep't of Employment Services,* 701 A.2d 837 (D.C. 1997).

In his compensation order, the hearing examiner found

> that claimant did not sign the employer's First Report of Injury. Claimant did sign the Employee Claim Application and the Employee's Notice of Injury. I therefore find that claimant knew of the relationship between her injury and her employment as of May 2, 1988.

Both the Employee Claim Application and the Employee's Notice of Injury were completed, signed, and filed on March 18, 1991. It does not logically follow from Ms. Proctor's signature on those documents, however, that she knew about the relationship between her injury and her employ-

ment as early as May 2, 1988. The hearing examiner also stated:

> Since claimant testified that she had seen Employer's First Report of Injury or Occupational Disease, dated May 2, 1988, and since there was no allegation that claimant never saw the form, she was on notice that employer had filed the report with DOES, which initiated the statute of limitations period.

While that may be true, there is no evidence that she was on notice *as of May 2, 1988,* of the employer's filing. Although the report was filed on that date, the examiner expressly found that Ms. Proctor did not sign the report at that time (or at any time). The examiner points to no other evidence from which he draws the inference that Ms. Proctor saw or knew about the report as early as May 2, 1988. Ms. Proctor testified that she did indeed see the report, but not until she consulted her attorney, and there was no evidence of when that happened.[6] Nor was any evidence presented, apart from her apparently forged signature on the report, which would establish when Ms. Proctor first saw it.[7]

It is possible that the examiner did not believe petitioner's testimony that she only learned of the report through her attorney. He may have found that she saw the report before it was filed even though he did not believe that the signature on the report was hers. Or he may have found that she was otherwise on notice that the report had been filed. The examiner did not make any such findings, however, nor is there any evidence in the record to support such findings if he had made them. Furthermore, it is noteworthy that, in her affirmance of the examiner's decision, the

---

6. Ms. Proctor testified that she did not remember when she first contacted her attorney, but that it was "considerably after the accident." She states in her brief that she did not consult with her attorney until March 18, 1991, the day she filed her claim for workers' compensation. There was, however, no testimony or other record evidence pinpointing the date.

7. To support his finding that Ms. Proctor had notice of the report as of May 2, 1988, the examiner cited a passage of the transcript in which Ms. Proctor acknowledged that she had seen the report. In that excerpt, however, Ms. Proctor started to explain when she first saw the report, but she was interrupted and did not have a chance to complete her response.

only evidence upon which the Director re-
lied was Ms. Proctor's purported signature
on the report, which the examiner had
found was not hers.

### IV

On remand, the Director shall interpret
the language of D.C.Code § 36–314(a) *de
novo.* If she decides to adopt the analysis
set forth in *Harris I,* she must also state
explicitly that she would have adopted that
analysis even if *Harris I* had never been
decided. Assuming she does so, she must
then send the case back to the hearing
examiner for further proceedings to deter-
mine the date on which Ms. Proctor first
had notice of the employer's injury report.
Since the present record does not support
the examiner's finding, we expect that the
examiner will need to receive additional
evidence regarding that date. See note 6,
*supra.* If, on the other hand, the Director
adopts a construction that is different from
*Harris I,* she shall enter an order that is
consistent with her interpretation.

The order on review is vacated, and this
case is remanded to DOES for further
proceedings consistent with this opinion.

*Vacated and remanded.*