Clifford W. TEAL, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

Washington Gas Light Company, Intervenor.

No. 89–14.

District of Columbia Court of Appeals.

Argued Jan. 5, 1990.
Decided Sept. 19, 1990.

---

David Schloss, for petitioner. Charles T. Smith, II, was on the brief, for petitioner.

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Roberta Willis Sims, with whom Frank H. Strickler, was on the brief, for intervenor.

Before NEWMAN and TERRY, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

Petitioner seeks review of a decision by the Director of the Department of Employment Services holding him ineligible for workers' compensation benefits because of his failure to give timely notice of injury to his employer, as required by D.C.Code § 36–313 (1988). We affirm the Director's dismissal of petitioner's claim.

I

Petitioner Teal was an employee of Washington Gas Light Company (WGL) in various capacities from 1970 through 1973 and from 1978 until October 1, 1985. During his employment as a collector at WGL from March 1983 until October 1985, Teal was disciplined for falsification of records and failure to follow company procedures. Teal resigned from his job with WGL on October 1, 1985. In his letter of resignation, he stated:

> Effective Oct. 1, 1985, I hereby resign from the employ of Washington Gas. I am doing so because of the unfair treatment and the unnecessary pressure placed by my superiors. I regret this action, however my transfer request has not been acted upon, and I have not adjusted to the promise of dismissal for any minor infraction of any rule.

On October 25, 1985, Teal applied for unemployment compensation. His claim form stated that he had "resigned under duress" from WGL because he "could no longer endure the harassment, double standards or falling prey to their intention of firing me."

After obtaining legal counsel, Teal filed with the Office of Workers' Compensation (OWC) a claim for benefits under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 *et seq.* (1988). The claim form, dated January 27, 1986, states the date of injury as October 1, 1985. A month later, on February 27, he signed an OWC form entitled "Employee's Notice of Accidental Injury or Occupational

Disease" on which all the other information was typewritten.[1] On both forms, and on an "Employee's Claim Application" dated February 25, his injury is described as "neck strain, insomnia, irritability, restlessness, loss of appetite," and its cause was asserted to be "untolerably [*sic*] stressful working conditions."[2] WGL received the Notice of Injury form on March 6, 1986.

After an evidentiary hearing on Teal's claim, held on October 9, 1986, the hearing examiner issued a compensation order in which he found that Teal suffered from a post-traumatic stress disorder caused by his employment and awarded him workers' compensation benefits for temporary total disability beginning October 1, 1985. WGL appealed the decision to the Director of the Department of Employment Services, renewing its contention, first made in a motion to dismiss which it had filed before the hearing examiner, that Teal's notice to WGL of his injury was untimely. In August 1987 the Director remanded the case to the hearing examiner for findings of fact and conclusions of law on the issue of whether Teal had timely notified his employer of his injury, as required by D.C. Code § 36–313 (1983).[3]

On remand, in an order dated October 14, 1987, the hearing examiner found that Teal did not dispute that he failed to give notice within thirty days from October 1, 1985, the alleged date of injury. According to the examiner's findings, Teal suffered from a "deteriorated mental condition" at that time and lived in virtual seclusion for several months after leaving WGL. In light of this mental condition, the hearing examiner concluded that Teal reasonably knew or should have known that his injury was related to his employment on January 27, 1986, when he consulted an attorney and decided to seek medical assistance. The examiner further found that Teal notified WGL within thirty days after January 27, 1986. The hearing examiner therefore concluded that Teal timely filed his notice of injury.

In a second administrative appeal, the Director held as a matter of law that the hearing examiner was incorrect in his determination that Teal had complied with the requirements of section 36–313, given Teal's failure to notify WGL of his injury within thirty days from October 1, 1985. The Director ruled that an emotional condition or injury does not relieve a claimant of the need to comply with the time requirements of section 36–313 unless the condition rises to the level of legal incompetence. She noted that the hearing examiner, while referring to a "deteriorated mental condition," made no explicit finding of incompetence and that there was no record evidence, and particularly no expert opinion, which would support such a finding. According to the Director, the testimony and medical reports of the psychiatrist who treated Teal failed to show how Teal's post-traumatic stress syndrome could have affected, or did affect, Teal's ability to understand or be responsible for his legal obligations. Instead, the Director said, the record clearly indicated that there was never any doubt that Teal's employ-

---

**1.** It is not clear who prepared this form (as well as the January 27 claim form) for Teal's signature, but one may reasonably infer that it was his lawyer or someone in the lawyer's office. The form contains several blanks to be filled in, as well as a place at the bottom for the claimant's signature. The entries in all of the blanks on all of the forms are typewritten, apparently with the same typewriter. It does not matter, of course, who prepared any of the forms; all that counts is what they said and, in the context of this case, whether they were timely filed and served on WGL.

**2.** The February 27 form erroneously stated that the injury occurred on October 1, 1986. The mistake was later corrected, and the correct date, October 1, 1985, was substituted. The correct date appears on the other two forms.

**3.** D.C.Code § 36–313(a) provides:

Notice of any injury or death in respect of which [workers'] compensation is payable under this chapter shall be given within 30 days after the date of such injury or death, or 30 days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relationship between the injury or death and the employment. Such notice shall be given to the Mayor and to the employer.

Subsection (b) requires the notice to be in writing and to state the "time, place, nature, and cause of the injury...."

ment caused his health problems. Accordingly, even assuming that the hearing examiner's finding was correct that Teal did not know the relationship between his injury and his employment until January 27, 1986, the Director concluded that Teal's notice was still untimely under section 36–313 because WGL did not receive notice of Teal's injury until March 6, more than thirty days after January 27.

For these reasons, the Director reversed the hearing examiner and dismissed Teal's claim on the ground of untimely notice. That ruling is now before us on Teal's petition for review.

## II

■ D.C.Code § 36–313(a) provides that a claimant must notify his or her employer, in writing, of a job-related injury within thirty days after the date of the injury, or thirty days after the claimant knew or should have known of a relationship between the injury and the claimant's employment. It is undisputed that, as both the hearing examiner and the Director found, Teal did not give such notice to WGL within thirty days from the date of his alleged injury, October 1, 1985.[4] At issue here is when Teal knew or should have known of a relationship between his injury and his employment.

■ In deciding this case, we must affirm the Director's ruling unless we conclude that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. D.C.Code § 1–1510(a)(3) (1987); see, e.g., Smith v. District of Columbia Department of Em-

ployment Services, 548 A.2d 95, 97 (D.C. 1988); Santos v. District of Columbia Department of Employment Services, 536 A.2d 1085, 1088 (D.C.1988). The Director in turn was bound by the decision of the hearing examiner, but only to the extent that the findings of fact on which the examiner's decision was based were supported by substantial evidence. Dell v. District of Columbia Department of Employment Services, 499 A.2d 102, 108 (D.C. 1985); George Hyman Construction Co. v. District of Columbia Department of Employment Services, 498 A.2d 563, 565 (D.C. 1985). We hold that the Director acted reasonably and within her authority when she reversed the hearing examiner's decision for lack of evidentiary support and dismissed Teal's claim.

The only record evidence on which the hearing examiner relied to reach his decision on the timeliness issue was three pages of Teal's testimony from the October 1986 hearing. That testimony, as summarized by the hearing examiner, was to the effect that Teal "stayed locked in his room on many occasions and could hardly eat or sleep" in the months following his resignation, and that "he lived in virtual seclusion until sometime in late January 1986 when he sought medical treatment." On this shaky foundation, the hearing examiner based his finding that Teal was "unable to give notice" to WGL within thirty days after October 1, 1985.[5] Without citing any record evidence, the hearing examiner also "infer[red]" that at that time [in January 1986, when Teal retained counsel and sought medical treatment] it was apparently suspected that claimant's condition may

---

4. Teal relies in part on an exception to the notice requirement found in D.C.Code 36–313(d)(1) (1988). That section states that failure to give notice shall not bar a claim if the employer, the employer's agent, or the insurance carrier "had knowledge of the injury and its relationship to the employment and the Mayor [i.e., the OWC, as the Mayor's agent] determines that the employer or carrier has not been prejudiced by failure to give such notice[.]" Teal contends that his claim should not be barred because WGL had actual knowledge of his injury—through his resignation letter and his unemployment compensation claim dated October 25, 1985—and because WGL suffered no prejudice from the delay in the filing of his claim for

workers' compensation. We need not reach the prejudice issue because we are unpersuaded by Teal's assertion that WGL had actual knowledge of his injury. Not only do the two cited documents fail to assert that Teal suffered a work-related injury; they lack any allegation that Teal was injured at all. The documents merely express Teal's dissatisfaction with the work environment at WGL.

5. This finding is fundamentally inconsistent with the uncontested evidence that Teal was able to, and did, file an articulate unemployment compensation claim in October 1985.

be work related...." Likewise, the hearing examiner cited no evidence, medical or otherwise, to explain why Teal's alleged "deteriorated mental condition" prevented him from understanding his legal obligations or why his condition suddenly improved in January 1986.

To support his decision, the hearing examiner cited only one case, *Woolfolk v. MTI Construction Co.*, H & AS No. 84–457, OWC No. 0041251 (1985), which we find clearly distinguishable. *Woolfolk* involved a workers' compensation claim which was filed only after medical experts had advised Woolfolk that his injury, ulnar nerve entrapment, was work-related. In the case at bar, however, Teal's decision to file his claim could not have been triggered, or his delay in notifying WGL excused, by medical treatment. Teal filed his workers' compensation claim and notified WGL several weeks before his initial consultation with the psychiatrist who diagnosed his post-traumatic stress disorder.[6] Teal's awareness of his work-related injury must therefore have come from another source.

 Substantial, credible[7] evidence of record shows that Teal was aware of his injury and understood, or reasonably should have understood, the nexus between his injury and the stressful working conditions at WGL by the time he left WGL's employment on October 1, 1985. When asked at the hearing how the difficult relationship with his supervisor had affected him, Teal said that he had suffered heart and neck problems between 1983 and 1985. He later testified that he "started losing a lot of sleep" after he was suspended from work for one day on September 18, 1985, because he felt he had been treated unfairly. Teal also acknowledged at the hearing that when he was given a second suspension a few days later, "that was even much worse as far as *the effect it had on me* because I even slept less then" (emphasis added). Another "effect" of this incident was "disorientation.... I really didn't know which end was up, what to do." In explaining his resignation from WGL, Teal testified that between the middle of September and the beginning of October "I had not slept. My eating habits were off. And like I said, I was completely disoriented." Finally, a medical report from Dr. Malloy dated April 16, 1986, confirmed that physical manifestations of Teal's asserted injury were present in September 1985 and that Teal's problems continued after his resignation from WGL because of Teal's "recurrent and intrusive" recollections of his confrontations with his supervisor.

The hearing examiner plainly ignored this substantial evidence and chose to rely instead on evidence which did not support his conclusion. The Director saw this defect in the examiner's ruling and ruled that there was not "a sufficient evidentiary basis for concluding that [Teal] was rendered legally incompetent by reason of his deteriorated mental condition" so as to excuse his untimely notice. She also pointed out that Teal "was not seen by a physician during the crucial period when his alleged deteriorated mental condition was preventing him from giving notice." Finally, the Director said:

> [T]he record clearly indicates that there was never any doubt as to the cause of claimant's problems. While claimant may not have had the benefit of legal consulation and a medical diagnosis within 30 days of the date of injury or his last exposure to employment conditions, the record does not indicate that he ever had any doubt as to his employment being the cause of his various problems.

---

6. Although Teal testified that he first saw Dr. Bernard Malloy, the psychiatrist who diagnosed and treated him, in January 1986, Dr. Malloy himself testified that he first saw Teal in April 1986. The doctor's report, which is in the record, corroborates Malloy's testimony rather than Teal's.

7. Important here is the hearing examiner's conclusion in his order of February 12, 1987, that Teal's testimony at the October 1986 hearing was credible. Credibility determinations of a hearing examiner are accorded special deference by this court. *George Hyman Construction Co., supra,* 498 A.2d at 566 (citation omitted). The record evidence reveals no reason to question Teal's veracity.

Our reading of the record convinces us that the Director's ruling was supported by substantial evidence (as the hearing examiner's was not) and that Mr. Teal was well aware of the etiology of his medical problems no later than October 1, 1985, the day he resigned. He therefore was obliged under D.C.Code § 36–313 to give notice to his employer within thirty days from that date.

■ The important twofold purpose of notice requirements is "[f]irst, to enable the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury." 2B A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 78.10, at 15–102 (1989) (footnote omitted). Both of these purposes were thwarted by Teal's untimely notice to WGL. We do not foreclose the possibility that other claimants, unlike Mr. Teal, may adduce substantial evidence to show that their work-related injuries rendered them unable to meet their legal obligations, particularly their obligation to give timely notice of an injury to an employer. See id. § 78.46. We hold only that Teal failed to do so, and that the Director was therefore correct in dismissing his claim.

*Affirmed.*

MACK, Senior Judge, dissenting:

I cannot join the majority in approving the rejection by the Director of the Department of Employment Services, as a matter of law, of the hearing examiner's factual findings that petitioner had given timely notice of his injury. The hearing examiner found that petitioner, subsequent to his leaving employment, suffered from a "deteriorated mental condition" which prevented his awareness, for legal and other purposes, of the nexus between his injury and employment with WGL. The record shows that there was substantial evidence to support the examiner's findings, evidence supplied by petitioner's psychiatrist and petitioner himself (to which the majority here only pays lip service). In evaluating the psychiatrist's credibility, the hearing exam-

iner found his testimony to be "well-reasoned and supported by adequate rationale under the facts of this case." The examiner likewise concluded that petitioner's testimony was credible. Indeed, in this court, the majority admits that "record evidence reveals no reason to question [petitioner's] veracity." In this context, therefore, the examiner properly concluded that petitioner reasonably knew or should have known that his injury was work related on January 27, 1986, when he consulted an attorney and decided to seek psychiatric assistance, and that petitioner notified the employer within thirty days after that date.

In *Dell v. DOES,* 499 A.2d 102 (D.C. 1985), this court recognized that section 3626.4 of 29 D.C.Reg. 5565 (1982) applies to all cases. Section 3626.4 states, "[t]he Director shall affirm the compensation order if it is supported by substantial evidence in the record." Moreover, the hearing examiner's decision as to an employee's "awareness" of a nexus is entitled to a greater deference where, as here, the examiner has heard live testimony and observed the demeanor of the witnesses. The definition of substantial evidence is "more than a mere scintilla" and the Director is bound by the hearing examiner's decision if the findings are supported by substantial evidence, *"even though the reviewing authority may have reached a contrary result based on an independent review of the record."* *Dell, supra,* 499 A.2d at 108 (emphasis added).

Nor can I see that the employer here was prejudiced by claimed untimely notice since there is no evidence that either of the "two purposes" for the notice requirement (that is, treatment and investigation) would be thwarted. It is significant here that WGL waited four months after receiving notice on March 6, 1986, before it had petitioner examined by its physician, and also that the very source of petitioner's claimed injury was the conduct of petitioner's direct supervisor toward him. This situation could not have been unknown to WGL because petitioner had made repeated efforts to be transferred for this reason and had filed for unemployment compensation on October 25, 1985, alleging that he was forced to

resign by the activities of his supervisor. In this regard, it is somewhat of an anomaly that the majority chooses to cite Teal's resignation letter of October 1985 as sufficient evidence that Teal knew he had a work related injury *and* as insufficient evidence that the employer had notice that Teal had a work related injury for purposes of D.C.Code § 36–313(d)(1) (1988).

I would hold there was substantial evidence to support the hearing examiner's findings, that in the alternative, the employer had sufficient notice, was not prejudiced, and that petitioner's claim for worker's compensation rights should not be barred. I respectfully dissent.