Daniel N. WRIGHT, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Potomac Electric Power Company,
Intervenor.

No. 05–AA–764.

District of Columbia Court of Appeals.

Argued March 8, 2007.
Decided May 3, 2007.
Opinion Amended on Rehearing
May 30, 2007.

W. Scott Funger, for petitioner.

Edward E. Schwab, Deputy Solicitor General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed,

and Todd S. Kim, Solicitor General, filed a statement in lieu of brief, for respondent.

William P. Flanagan, with whom Emily J. Glendinning, McLean, VA, was on the brief, for intervenor.

Before FISHER and BLACKBURNE-RIGSBY, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This petition comes before us upon the reversal of the decision of the District of Columbia's Office of Hearings and Adjudication granting petitioner Daniel Wright ("Wright") disability benefits based upon a finding that Wright had sustained an accidental injury, in the nature of a psychological injury, under the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 32–1501 *et seq.* (2001) ("the Act"). Wright argues that the Compensation Review Board ("Review Board") erroneously applied our decision in *Estate of Underwood v. National Credit Union Admin.,* 665 A.2d 621 (D.C.1995), in determining that his claim of injury is not compensable under the Act. In comparing the circumstances of sexual harassment as a basis for an injury claim in *Underwood* to the instant claim of injury, premised upon a racial epithet which occurred at work, the Board denied Wright's claim because he has not suffered an "injury" within the meaning of the Act. We affirm.

## I.

### (A)

Intervenor Potomac Electric Power Company ("Pepco") is a public utility company providing electrical services in the Washington Metropolitan Area. Petitioner Wright, an African American male, worked in the Cable Splicer occupational group at the Pepco facility on Benning Road in Southeast Washington. His employment required him to perform in proximity to high voltage electrical cable lines. Wright has been promoted four times since he was hired by Pepco in 1986, eventually becoming a First Class Cable Splicer.

On January 3, 2002, Wright returned to Pepco's base headquarters at the end of his shift to await a new assignment. He listened to his African American supervisor, Mr. Tony Duncan ("Duncan"), talking on the phone to a work crew in the field about completing work on an assignment. The conversation was in part about the authorization of overtime work for the crew to complete the job, which Duncan was reluctant to do. As he heard parts of the conversation, Wright made the comment to Duncan that "Aw, man, you don't look out for us." Duncan responded to him by saying, "You're m -f ' right I don't look out for y'all. Ya'll look out for ya'll self; I look out for myself." Wright then stated, "whoa, Tony do we gotta be going like that"? Duncan said, "Man, shut up, you fake a n ." This exchange was witnessed by three coworkers in the immediate area, and several more in the general vicinity. Within a few weeks of the verbal incident, Wright began to experience a change in his demeanor, and to exhibit symptoms of fatigue, decreased appetite, concentration, chest pains, and shortness of breath. On March 13, 2002, Wright sought care and treatment from Dr. Jan Fiske, a psychologist, who opined that Wright was suffering from depression and anxiety resulting from the January 3, 2002 incident.

On March 18, 2002, Wright complained to Pepco's Equal Employment Opportunity office that his supervisor had insulted him with a racial epithet. Pepco investigated the complaint and ultimately disciplined the supervisor. Wright claims that he was so humiliated and emotionally distressed

as a result of his supervisor's harassment that he voluntarily resigned from Pepco on August 2, 2002.[1] On December 2, 2002, he filed a charge of discrimination with the United States Equal Employment Opportunity Commission.

**(B)**

Wright, along with other present and former African American employees of Pepco, brought suit against their employer in the United States District Court for the District of Columbia, alleging, *inter alia,* that Pepco discriminated against them on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C.Code § 2–1401 *et seq.* ("DCHRA"), and 42 U.S.C. § 1981 ("Section 1981"). Wright cited the racial epithet with which his supervisor insulted him as the basis of his allegation of racial discrimination. On August 25, 2004, the presiding judge granted Pepco's motion for summary judgment, finding that no named claimant had made a prima facie case of discrimination by a preponderance of the evidence. With regard to Wright, the judge reasoned that "[i]t has long been recognized that an isolated use of a racial epithet, though repugnant, is not actionable under Title VII" (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII" (citation omitted))). The judge also noted Pepco's appropriate steps to answer the alleged conduct of Wright's supervisor through a disciplinary action.

Wright later made a claim for workers' compensation benefits to the District of Columbia's Office of Hearings and Adjudication, pursuant to the provisions of the District of Columbia Workers' Compensation Act of 1979. After an evidentiary hearing, the administrative law judge concluded on November 15, 2004, that Wright had suffered an accidental, emotional psychological work injury on January 3, 2002, which arose out of and in the course of his employment at Pepco and caused his temporary and total disability. On appeal, the Compensation Review Board concluded there was no jurisdiction for Wright's claim under the Act, and vacated the award. This petition followed.

**II.**

**(A)**

The Workers' Compensation Act provides a comprehensive plan for compensating private sector employees for their work-related injuries. It makes the employer liable without fault if the employee's occupational injury or death falls within the scope of the Act. *See* D.C.Code § 32–1503(b). However, this liability on the part of the employer is exclusive; accordingly, the employee cannot seek any other remedy against the employer for such injury. *See* D.C.Code § 32–1504(a).

■ Although in earlier years the Act was largely applied to physical injuries and any consequential mental condition arising therefrom, it is now settled that, in appropriate circumstances, an emotional injury alone may be compensable under the Act. *Gary v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 1205, 1208 (D.C. 1998). In other decisions, *e.g., Parkhurst*

---

1. Although this was the date on which petitioner ultimately resigned, he did not return to work at Pepco after March 13, 2002.

*v. District of Columbia Dep't of Employment Servs.*, 710 A.2d 854 (D.C.1998); *Charles P. Young Co. v. District of Columbia Dep't of Employment Servs.*, 681 A.2d 451 (D.C.1996); *Underwood, supra,* we have delineated the principles which govern whether such injuries are within the exclusive coverage of the Act. This appeal presents another question in this regard.

■ Given the expertise of the Board derived from regular adjudication of compensation cases, we give some measure of deference to its findings and conclusions. Thus, we will not disturb a decision if it rationally flows from the factual finding on which it is based, and if those findings are supported by substantial evidence in the record. *Children's Def. Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999). Subsequent review of an agency decision will be affirmed by this court unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law. *See Teal v. District of Columbia Dep't of Employment Servs.*, 580 A.2d 647, 650 (D.C.1990).

### (B)

■ In this instance the Review Board, guided by our decision in *Underwood,* concluded that petitioner's asserted injury was not caused by "a risk involved in or incidental to" his employment. The Board considered and rejected arguments premised on *Parkhurst* and *Young,* and vacated the award of benefits.

■ In our *Underwood* decision we addressed, at length, the nature of the appropriate remedy where an injury affords potential common law or statutory relief on one hand or, alternatively, comes within the jurisdiction of the Workers' Compensation Act. In *Underwood,* the claimant alleged that she suffered sexual harassment

on her job causing emotional distress. She filed an action in court, successfully recovering damages for emotional distress, but not for sexual harassment. *Id.* at 627. In that context, we addressed the question of jurisdiction under the workers' compensation provisions versus a judicial remedy for tortious conduct. *Id.* at 631. We concluded that the administrative agency will have primary jurisdiction where there is a "substantial question" of workers' compensation. *Id.* We recognize that it is not uncommon that there may be claims of emotional distress based upon acts of a supervisor or co-worker. However, such an injury is only compensable under the Act if it "arises out of and in the course of employment...." D.C.Code § 32–1501(12). An injury "arises out of and in the course of employment when it occurs in the course of the employment and as the result of a risk involved in or incidental to the employment or to the conditions under which it is required to be performed." *Fazio v. Cardillo,* 71 App.D.C. 264, 265, 109 F.2d 835, 836 (1939).

In *Parkhurst,* the employee worked in a series of stressful positions and also asserted that she was subjected to a continuing pattern of sexual harassment. Ultimately, she filed a claim for emotional injury seeking benefits under the Act. In reviewing the denial of an award, we cautioned that there may be cases involving an emotional disability stemming from "mixed causes," meaning that the claimed mental condition could well be attributable to functions of work or to harassment, or to a combination of both. We held that the agency "must decide in the first instance whether petitioner's disability (if proven) is compensable despite being grounded partly in ... harassment." *Id.* at 857.

Appellant urges that the insulting language addressed to him, causing mental

anguish, occurred while he was at work and discussing overtime pay with his supervisor. This behavior took place in the presence of others, and should, it is argued, be deemed by the Board a work-related injury. The precise question presented is whether appellant's claim of injury is compensable under the Act, as one substantially arising in the course of performing one's work—without regard to fault—or rather, is more in the nature of a complaint of a tort or other statutory wrong. In *Underwood* we addressed this question in circumstances involving sexual harassment converging with the stress associated with an employee's work responsibilities. We said:

> We conclude *as a matter of law* that sexual harassment is not "a risk involved in or incidental to" employment. We do so not merely because a statute—the Human Rights Act—forbids such harassment during day-to-day workplace interaction but, more fundamentally, because sexual harassment is altogether unrelated to any work task. Sexual harassment is facilitated on the job only through the happenstance of two persons' proximity at the same place of employment; it has nothing whatsoever to do with, and cannot be justified by reference to, any task an employee is called upon to perform, even if the persons involved work together and have a supervisor-supervisee relationship.

*Id.* at 634 (emphasis added, internal footnote omitted). *See also Spartin v. District of Columbia Dep't of Employment Servs.,* 584 A.2d 564 (D.C.1990).[2] Reading these decisions together (*Underwood* and *Young*), we reminded the agency (the Compensation Board) in *Parkhurst* that it

must determine initially, if there is a substantial question that the disability arose, even in part, out of and in the course of employment. *Id.* at 857.

When the Review Board considered the record in this case, as have we, it is apparent there is no dispute as to the facts. The insulting remarks occurred on the premises of the employer. The record does not reveal that the incident was part of a continuing pattern of conduct; that distinguishes this case from *Young* and *Spartin.* Rather the claim stemmed from a single conversation about overtime pay. Given these circumstances, the Board concluded that petitioner's condition did not result from any risk associated with the performance of his job. In order for petitioner to prevail in this appeal, he must demonstrate that the Review Board was unreasonable and arbitrary in concluding his "injury" was not one which arose from a risk involved in or was incidental to his employment and therefore compensable under the Act. In the circumstances of this case, the injury was deemed to be more akin to a tort or other statutory wrong and not covered by the Act. This conclusion is not unreasonable or arbitrary. We therefore uphold it.

*Affirmed.*

---

**2.** In *Spartin, supra,* the claimant was subject to stress resulting from extensive work-related travel. *See Spartin, supra,* 584 A.2d at 566. In *Young, supra,* the claimant was subject to derogatory remarks, undermined authority, and unexpected department reorganization in her workplace. *See Young, supra,* 681 A.2d at 453–54.