960 A.2d 603 (2008)
HOWARD UNIVERSITY HOSPITAL, et al., Petitioner (in Nos. 04-AA-397, 07-AA-784 & 07-AA-785), and
MaryAnne Tagoe, Petitioner (in No. 04-AA-399),
v.
DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.
Nos. 04-AA-397, 04-AA-399, 07-AA-784, 07-AA-785.
District of Columbia Court of Appeals.
Argued May 31, 2006.
Decided November 20, 2008.
*605 John F. Ward, for petitioner, Howard University Hospital.
MaryAnne Tagoe, pro se.
Robert J. Spagnoletti and Edward E. Schwab, respectively Attorney General and Deputy Attorney General for the District of Columbia at the time of argument, filed a statement in lieu of brief for respondent.
Before RUIZ, GLICKMAN and FISHER, Associate Judges.
GLICKMAN, Associate Judge:
Howard University Hospital and MaryAnne Tagoe petition for review of a decision by the Department of Employment Services ("DOES") on Tagoe's worker's compensation claim, which she filed after suffering a stroke while working as a physician in the Hospital's residency program. The Administrative Law Judge ("ALJ") who conducted the evidentiary hearing found that Tagoe's stroke and ensuing migraines were work-related, her failure to give timely written notice of her injury was excused, but she had not become disabled within the meaning of the Workers' Compensation Act. Accordingly, the ALJ awarded Tagoe her medical expenses but denied her claim for disability compensation and vocational rehabilitation benefits. The Director of DOES affirmed the ALJ's compensation order. After hearing oral argument on the parties' review petitions, we remanded the record for supplemental proceedings. The record was returned to us on July 6, 2007, and we have since received additional briefs from petitioners. Their petitions for review (in Nos. 04-AA-397 and 04-AA-399) are now ready for decision.[1]
In its petition, the Hospital contends that the DOES erred in excusing Tagoe's failure to give timely notice of her injury. We agree with that contention, which means that Tagoe's claim for disability compensation (though not her claim for medical and vocational rehabilitation benefits) is barred. For her part, Tagoe complains of certain rulings admitting or excluding evidence, and of the agency's rejection of her claim for vocational rehabilitation. We conclude that Tagoe's claims entitle her to no relief.

*606 I. Standard of Review
In accordance with the District of Columbia Administrative Procedure Act,[2] we are authorized to set aside the DOES decision in this worker's compensation case if it is unsupported by substantial evidence in the record or otherwise not in accordance with law. To pass muster, "(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings."[3] Our application of the "substantial evidence" test, which requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,"[4] is deferential to the ALJ's fact-finding prerogatives.[5] Similarly, though in general we review de novo the legal conclusions of the Director and his surrogate, the Compensation Review Board ("CRB"),[6] we acknowledge their expertise and DOES's responsibility for administering the Workers' Compensation Act. Hence, we ordinarily must defer to their reasonable interpretations of ambiguous provisions in that legislation.[7]

II. The Duty to Furnish Timely Notice of Injury
In June 2000, after having earned a medical degree in Ghana, MaryAnne Tagoe commenced a one-year transitional residency program at Howard University Hospital. On October 4, 2000, while on a rotation with the cardiothoracic vascular surgery unit, Tagoe suffered what was described in her medical records as a "cerebral artery occlusion with cerebral infarction"  in other words, a stroke. Her treating physician in the Hospital's emergency room, and for some time thereafter, was Dr. Roger Weir, a member of the neurology department. Tagoe remained hospitalized for a week and then recuperated at home for two weeks before returning to work on October 25, 2000. She did not complete her tour with the cardiothoracic unit but started her next assigned rotation in November and successfully completed the transitional residency program in June 2001 with an overall "satisfactory" rating. Although Tagoe received a contingent offer of a second-year residency at another institution, she did not pursue it. Instead, from October 2001 through July 2002, Tagoe worked for several months as a care manager and medical assistant at two assisted living facilities. Tagoe then entered a master's degree program in public health at the George Washington University, where she performed successfully. The record does not contain information on her subsequent professional progress.
*607 As the ALJ found and the Hospital does not dispute, Tagoe's stroke was precipitated by the stress of her duties as a resident; in her cardiothoracic rotation, Tagoe reportedly had been working more than ninety hours a week and sleeping only a few hours a night. Tagoe did not inform her supervisors or the Hospital of the causal relationship between her work and her medical condition, however, until she filed a written notice of injury with the Office of Workers' Compensation on May 29, 2001. Tagoe claimed she had continuing migraine headaches resulting from her stroke that prevented her from completing her medical training, with a consequent loss of income. She sought payment of her medical expenses, disability benefits, and vocational rehabilitation payments to cover her tuition at George Washington University.
In addition to disputing Tagoe's claim on its merits,[8] the Hospital argued that the claim was barred by Tagoe's failure to furnish written notice of her injury, including its alleged cause, within 30 days after she was or should have been aware of its relationship to her employment, as the Workers' Compensation Act requires.[9] The purposes of this notification requirement are to enable the employer to investigate the facts surrounding the injury and to provide prompt medical attention.[10] While the failure to give proper notice does not preclude a claim for causally related medical expenses (which may include the cost of vocational rehabilitation services),[11] it ordinarily does bar a claim for disability income benefits.[12] D.C.Code § 32-1513(d) provides, however, that failure to give proper notice shall not bar a compensation claim under two circumstances:
(1) If the employer (or his agent in charge of the business in the place where the injury occurred) ... had knowledge of the injury ... and its relationship to the employment and the Mayor determines that the employer... has not been prejudiced by failure to give such notice; or
(2) If the Mayor excuses such failure on the ground that for some satisfactory reason such notice could not be given....[[13]]
In her initial compensation order, following an evidentiary hearing, the ALJ found that Tagoe's supervisors knew of her stroke from the outset, that Tagoe reasonably expected Dr. Weir to inform her supervisors of any connection between her injury and her work (though he did not do so), and that the Hospital was not prejudiced by Tagoe's failure to give timely written notice of her injury. Under those circumstances, the ALJ concluded, the exception *608 set forth in subsection (d)(1) of D.C.Code § 32-1513 was satisfied and Tagoe's claim for compensation was not time-barred. The Director affirmed that ruling, emphasizing that Tagoe's injury "occurred on [her] Employer's premises and Employer's agents monitored her progress" as she recovered. The ALJ and the Director made no explicit findings, however, as to when Tagoe herself first knew or should have known that her stroke was work-related, or when the Hospital first had knowledge of that claimed relationship.
After the petitions for review came before us for oral argument, we determined that in order to decide whether Tagoe's failure to give timely written notice of her claim was properly excused pursuant to either of the exceptions in D.C.Code § 32-1513(d), it would be necessary to remand the record for an "authoritative interpretation"[14] of the statute and for supplemental findings of fact.[15] Our remand order posed two questions of statutory interpretation. First, we asked the Director to advise whether subsection (d)(1)'s requirement of employer "knowledge of the injury... and its relationship to the employment" is satisfied if the employer merely knows the injury occurred in the course of employment, or whether the employer also must know the injury (at least allegedly) arose out of  i.e., was causally related to the employment. Second, we asked the Director whether the knowledge requirement of subsection (d)(1) means the employer must have actual knowledge of the (alleged) relationship of the employee's injury to her employment, or is satisfied so long as the employer should have known (i.e., had constructive knowledge) of that relationship.[16]
Our order also identified the following three factual questions to be answered on remand:
(1) When was it that Tagoe became "aware or in the exercise of reasonable diligence should have been aware" of a causal relationship between her stroke and her employment, triggering her duty to furnish notice of her injury under D.C.Code § 32-1513(a)?
(2) When and how did the Hospital first have "knowledge" within the meaning of D.C.Code § 32-1513(d)(1) of a causal relationship between Tagoe's stroke and her employment?
(3) Did "some satisfactory reason" exist why timely notice of Tagoe's claim "could not be given" to the Hospital, within the meaning of D.C.Code § 32-1513(d)(2) (a statutory exception not addressed by the ALJ or the Director in their initial consideration of the claim)?
The questions of statutory interpretation were answered on remand in an opinion by the CRB. The CRB reasoned that because the Workers' Compensation Act defines a compensable "injury" as an *609 "accidental injury or death arising out of and in the course of employment,"[17] the notice exception in D.C.Code § 32-1513(d)(1) requires an employer's knowledge to encompass both components of the definition. In addition, relying on an earlier decision by the Director,[18] the CRB rejected a "should have known" standard and concluded that subsection (d)(1) requires an employer to have "actual knowledge." Thus, the CRB concluded, "[i]n order for [D.C.Code] § 32-1513(d)(1) to be satisfied, an employer must know that the injury arose out of the employment and that the injury occurred in the course of the employment, and an employer must have actual knowledge of the injury and its relationship to the employment." While the CRB's interpretation of subsection (d)(1) may not be compelled by the statutory language, it comports with the general rule throughout the United States[19] and is not foreclosed by any prior decisions of this court. It is a reasonable construction; since subsection (d)(1) allows the employer's knowledge to substitute for timely written notification of the cause of the injury, it is logical that the employer must have actual knowledge of the cause for the subsection to be satisfied. Deferring to the CRB, we accept its answers to our questions as binding.
After construing the statute at our behest, the CRB remanded the compensation order to the ALJ for the supplemental findings we requested. The ALJ issued an amended compensation order that answered our three factual questions as follows. First, the ALJ found that Tagoe's treating physician, Dr. Weir, advised her on or about October 12, 2000, that her stroke was causally related to the stress associated with her volume of work and lack of sleep. This finding is supported by Tagoe's own testimony and by Dr. Weir's treatment notes.[20] Thus, the ALJ found, Tagoe became aware, or in the exercise of reasonable diligence should have been aware, of the causal relationship between her stroke (and its sequelae, such as her migraines) and her employment by October 12, 2000.
Second, the ALJ found the Hospital first had (actual) knowledge of the claimed causal relationship when Tagoe filed her written notice of injury on May 29, 2001. This finding was supported by the testimony of two of Tagoe's Hospital supervisors, and the ALJ found no evidence to the *610 contrary. While Tagoe claimed she expected Dr. Weir to inform her supervisors about any relationship between her condition and her job, he did not do so.
Lastly, addressing our third question, the ALJ found that when Tagoe returned to work as a medical resident at the Hospital, "she was taking several prescribed and non-prescription medications for migraine headaches," and her "physical and mental status, prior to May 29, 2001, was not fully conducive to making well-founded, clear-headed judgments." Although Tagoe was far from incapacitated  as the ALJ also found, "after the October 2000 event, claimant continued to perform the duties of a physician, with strenuous and extended hours of concentration, for eight months after the event and satisfactorily completed her transitional program"[21]  she was "not aware" of any need to file a notice that her stroke was caused by her work activities, and "she clearly expected Dr. Weir to inform her supervisors, and their colleagues, of any such connection."[22] We accept all the foregoing findings as supported by substantial evidence in the record. Citing these circumstances, and "the principles that workers' compensation statutes are to be liberally construed for the benefit of the employee, and that doubts about law or facts are generally to be resolved in the employee's favor,"[23] the ALJ concluded that there were "satisfactory reasons" why timely notice of the claimed relationship between Tagoe's stroke and her employment "could not be given" to the Hospital within the meaning of D.C.Code § 32-1513(d)(2).[24]
The answers that we have received to our questions on remand compel us to conclude as a matter of law that Tagoe did not furnish timely notice of injury, and that her failure to do so was not excused under either statutory exception to the notice requirement. As of October 12, 2000, based on her physician's advice, Tagoe was aware that her stroke was triggered by the stress of her duties as a resident. The thirty-day period set forth *611 in D.C.Code § 32-1513(a) for giving written notice of her injury to the Hospital began to run by that date, but it was not until several months later that Tagoe furnished the required notice. While D.C.Code § 32-1513(d)(1) provides that knowledge on the part of the employer or the employer's "agent in charge of the business in the place where the injury occurred" may excuse the failure to furnish written notice, so long as the employer has not been prejudiced by the failure to give timely written notice, the requirements of subsection (d)(1) were not met here. It is undisputed that, for subsection (d)(1) to apply, the employer or its agent must have had the requisite knowledge of the injury within the same thirty-day period specified in subsection (a).[25] Although Dr. Weir certainly knew by October 12 of Tagoe's injury and its relationship to her employment, he cannot be deemed the Hospital's agent for notice purposes, as he was not Tagoe's supervisor (or otherwise in charge of her work place), nor was he charged with any duty as a Hospital employee to report her work-related injury to his superiors.[26] And though the Hospital knew of Tagoe's stroke within the thirty-day period, it lacked actual knowledge within that time frame that the stroke arose out of her employment activity (Dr. Weir not having conveyed that information). Notwithstanding the absence of prejudice, therefore, the exception in subsection (d)(1) is inapplicable (under the construction given by the CRB, which we adopt).[27]
Finally, however much we may sympathize with Tagoe's struggles in the aftermath of her stroke, we cannot agree with the ALJ's legal conclusion that her failure to give notice is excusable under subsection (d)(2) of D.C.Code § 32-1513.[28] That conclusion does not follow rationally from the factual findings on which it is based. Subsection (d)(2) requires satisfactory reasons why proper and timely notice "could not be given." Neither the DOES nor this court is at liberty to disregard that plain statutory language.[29] The Director of DOES has construed those words to mean that a deteriorated mental or emotional condition will not excuse the timely filing of notice unless the condition *612 rises to the level of legal incompetence.[30] We upheld that ruling in Teal.[31] Tagoe's condition may not have been "fully conducive to making well-founded, clear-headed judgments," as the ALJ found, but she certainly was not incompetent. Tagoe's ignorance of the obligation to give notice and assumption her treating physician would convey any necessary information to her supervisors similarly falls short of establishing that she "could not" give proper notice.[32]

III. Tagoe's Claims of Error
As previously mentioned, Tagoe's unexcused failure to give timely written notice of her injury does not bar her claim for medical and vocational rehabilitation benefits. Her entitlement to medical benefits is not in dispute. The ALJ denied Tagoe's claim for vocational rehabilitation because he found that she was not disabled, a finding the Director upheld. In brief, the ALJ found Tagoe's migraines did not prevent her from continuing to work full-time as a physician; her decision to pursue an alternative career was not necessitated by her stroke and its sequelae; and she suffered no wage loss as a result of her injury.[33] Tagoe does not challenge the sufficiency of the evidence to support those determinations, but instead complains of certain rulings by the ALJ or the Director admitting or excluding evidence, and of the ALJ's determination not to address her vocational rehabilitation request.
We see no reason to disturb the evidentiary rulings. Over Tagoe's objection, the ALJ admitted supplemental medical reports by Dr. Weir and an independent physician who examined Tagoe at the Hospital's request, even though the reports were prepared and submitted after the close of discovery. The reports opined that Tagoe's recurring migraines were not linked to her stroke. Nonetheless, Tagoe was not prejudiced by the discretionary ruling admitting the reports, because the ALJ found the necessary medical causal relationship in spite of them, and the Hospital has not sought review of that finding.
Tagoe also contends the Director erred by refusing to allow her to introduce new evidence when she appealed the ALJ's initial compensation order. The new evidence consisted of (1) records of medical treatment Tagoe received at Alexandria Hospital for her headaches, which allegedly would have contradicted a subsidiary finding by the ALJ that Tagoe did not seek such post-injury treatment; and (2) documents pertaining to a complaint Tagoe submitted to the Accreditation Council for *613 Graduate Medical Education ("ACGME"), which allegedly would have undermined the testimony of one of her program supervisors.[34] Under former D.C.Code § 32-1522(b)(2) (2001), the Director had discretion to allow Tagoe to augment the record with additional evidence upon a sufficient showing of its materiality and reasonable grounds for her failure to present the evidence in the initial hearing.[35] We are not persuaded that the Director abused his discretion by denying Tagoe's request. The evidence was not newly discovered, its materiality is doubtful, and Tagoe did not demonstrate good reasons for failing to offer it at the hearing before the ALJ.[36]
Finally, the ALJ stated in her compensation order that, because Tagoe was not disabled, she would not address Tagoe's request for vocational rehabilitation payments. The Director affirmed the compensation order without specifically addressing the subject of vocational rehabilitation. We perceive no error in this regard. In pertinent part, the Workers' Compensation Act provides that "[v]ocational rehabilitation shall be designed, within reason, to return the employee to employment at a wage as close as possible to the wage that the employee earned at the time of injury. The Mayor shall monitor the provision of vocational rehabilitation of disabled employees and determine the adequacy and sufficiency of such rehabilitation."[37] Since, per the ALJ's finding, Tagoe suffered no wage loss and was not disabled as a result of her injury, she could show no entitlement to vocational rehabilitation benefits under this statute.

IV.

CONCLUSION
The amended compensation order issued on remand, like the original order, grants Tagoe's claim for causally related medical costs and denies her claim for wage loss and vocational rehabilitation benefits. For the reasons set forth above, that order is hereby affirmed.
RUIZ, Associate Judge, dissenting:
Although I agree that the CRB's interpretation, that D.C.Code § 32-1513(d)(l) requires actual notice by the employer, is reasonable, and we therefore must defer to it, I cannot agree with the majority's reversal of the ALJ's finding that the requirement of actual notice is excused on the facts of this case under the authority of D.C.Code § 32-1513(d)(2) "on the ground that for some satisfactory reason such notice could not be given" to the employer. Id. This was one of the factual findings that our remand order to the CRB requested that the ALJ make on remand. See ante at 608. Petitioner Howard University Hospital ("HUH") appealed the ALJ's determination, but the CRB strictly interpreted the terms of our remand order as not permitting the CRB to review the *614 ALJ's fact-findings implementing the statutory provision. In its submission to this court after remand, however, the CRB states that "the ALJ made appropriate findings."
The court now reverses the ALJ's factual finding under section 32-1513(d)(2)  a finding to which we owe deference unless not supported by substantial evidence, see Perkins v. D.C. Dep't of Employment Servs., 482 A.2d 401, 402 (D.C.1984)  on the ground that the ALJ misinterpreted the requirements of that statutory section.[1] The CRB, however, did not address the proper interpretation of this statutory provision on remand because it was not expressly instructed to do so in our remand order:
In its appeal to the CRB, the Petitioner [HUH] challenged the ALJ's application of D.C. Official Code § 32-1513(d)(2), asserting that the language "could not be given" requires circumstances preventing or prohibiting an injured worker from giving timely notice. However, given the DCCA's remand to DOES, the Panel is without jurisdiction to address the merits of the Petitioner's appeal at this time and, accordingly by separate order, dismissed its Application for Review without prejudice. (Exhibit "D").
The Panel is aware that the DCCA maintains that the expertise in workers' compensation law in this jurisdiction lies with DOES, who is charged with administering the Act, that DOES should make the initial interpretation [to] the Act's provisions after considering the language, structure, and purpose of the Act, and that the DCCA defers to the aforesaid interpretation if it is reasonable in light of the language and legislative history of the Act. See Mushroom Transportation v. D.C. Department of Employment Services, 698 A.2d 430, 432 (D.C.1997); Lincoln Hockey LLC v. D.C. Department of Employment Services, 810 A.2d 862, 866 (D.C.2002). However, in this case, the DCCA, in its Order stated:
After the foregoing questions are answered on remand, the record thus amplified should be returned to this division for a final decision on the pending petitions for review.
The Panel interprets this language as a grant of limited jurisdiction to the agency to only answer the questions posed by the DCCA in its Order with primary jurisdiction over this matter remaining with the DCCA. Based upon this interpretation, the Panel determines that it is precluded, at this time, from addressing the merits of the Petitioner's appeal and must return this matter to the DCCA for resolution of the pending appeals.
CRB Supplemental Decision and Order at 3.
In light of the ALJ's determination in favor of the claimant on the question of notice, and the CRB's limited view of its scope of action on remand, the court was requested to remand the case to the CRB a second time so the agency may provide the court with its interpretation of section 32-1513(d)(2). That request was denied by the court.
*615 There is no question that the issue of the proper interpretation of section 32-1513(d)(2) posed in this case, where the claimant reasonably expected that another employee would notify the employer of her work-related injury, is an issue of first impression for the court. The single case on which the majority relies, Teal v. D.C. Dep't of Employment Servs., 580 A.2d 647, 651 (D.C.1990), see ante at 614, dealt with a different question, under a different statutory provision, section 32-1513(a)[2] and addressed whether there was substantial evidence to support the agency's determination that the claimant was not so impaired as to be unable to understand the nexus between his injury and work, and so was required to give timely notice to the employer. See id. at 650 ("At issue here is when Teal knew or should have known of a relationship between his injury and his employment."). Teal does not address (or even mention) section 32-1513(d)(2),[3] the statutory provision at issue in this case. See 580 A.2d at 650 n. 4 (referring to  but not deciding  whether failure to give notice was excused under the predecessor to a different provision excusing notice, D.C.Code § 32-1513(d)(1)). Not surprisingly, the CRB does not cite Teal in either of its orders in this case or in its submissions to this court, nor did the ALJ. The law is clear as recited in the CRB's Supplemental Order quoted supra that the initial interpretation of the statute is for the agency, and that we are to defer to such an interpretation if reasonable.[4] Indeed, that is exactly what the court does in this case with respect to section 32-1513(d)(1). See ante at 611-12.
I would follow our usual course and remand for the CRB's views on the proper interpretation and application of section 32-1513(d)(2). First, our cases and basic notions of the proper allocation of responsibility between the courts and administrative agencies mandate that we should do so. See Mushroom Transp., 698 A.2d at 432. Second, the CRB's Supplemental Order and briefs to the court in no way indicate disagreement with the ALJ's findings; to the contrary, they are described as "appropriate." Yet the court is now reversing the ALJ's finding on notice without the required input from the CRB on a statutory provision that the agency has not previously had an opportunity to interpret as applied to facts similar to the ones in this case. Third, the ALJ's finding that the lack of notice should be excused under section 32-1532(d)(2) seems eminently reasonable given the facts of this case, where a young woman in her early thirties suffered a stroke while working as a resident physician at Howard University Hospital, the same place where she was diagnosed as having suffered the stroke as a result of the stress of work. Her treating physician, Dr. Roger Weir, is employed by HUH in the neurology department and, the ALJ found, "claimant expected Dr. Weir to inform her supervisors, and their colleagues, of any such connection" between *616 her work and the stroke.[5] The ALJ also found that "the validity of her expectation is clearly corroborated by Dr. Weir's treatment notes of October 12, 2000, which state, `I will speak with Dr. Ford (Program Director).'" The Hospital does not dispute that the stroke was work-related, nor does it claim to have been prejudiced by the lack of timely actual notice. The denial of benefits due to lack of timely notice to the employer, in other words, depends on an ultra-strict interpretation of an exception to the notice requirement of a statute that, we have said, should be "liberally construed for the benefit of the employee" in light of its humanitarian purposes. See Railco Multi-Const. Co. v. Gardner, 564 A.2d 1167, 1169 (D.C.1989).
Under these circumstances, I do not agree with the court's reversal of the ALJ's determination that "there was satisfactory cause for claimant's failure to give timely notice of her claim," see D.C.Code § 32-1513(d)(2) (providing that the Mayor may "excuse ... failure [to give notice] on the ground that for some satisfactory reason such notice could not be given"), without, at a minimum, seeking the agency's views on the proper interpretation of that statutory provision and its application to the facts of this case.
The court's decision not to remand is puzzling because there is no pressing reason for the court to decide the issue at this time. The ALJ found that, independent of the issue of notice, claimant is not entitled to disability benefits because there is no evidence that her work stress-related migraine headaches[6] have "resulted in any compensable lost wages." As the ALJ noted, claimant's successful completion of the medical residency program disproves her claim of disability. Moreover, claims for medical expenses are not precluded by lack of notice. See Safeway Stores, Inc. v. D.C. Dep't of Employment Servs., 832 A.2d 1267, 1271 (D.C.2003). The only possibility that prevents the issue of notice from being moot, is that claimant might at some future date make another claim against HUH for disability compensation resulting from the work injury she suffered eight years ago, in 2000. Although this is not entirely out of the realm of possibility, it is, I submit, highly unlikely; the more likely scenario is that she would file a claim against her current employer, based on aggravation. That the issue may again materialize some time in the future is not a compelling reason to depart from the norm and forgo the CRB's input at this juncture on an issue that has repercussions not only for Ms. Tagoe, but also for other claimants.
I would remand the case for the agency's views on whether Ms. Tagoe's reasonable expectation that her treating physician, who also was employed by HUH, would notify the Hospital of the work-related nature of her injury, when viewed in the context of her injuries, constituted "satisfactory reasons" to excuse claimant's *617 failure to give timely notice under section 32-1513(d)(2).
NOTES
[1] The Hospital also has filed protective petitions for review of the agency's actions on remand, which DOES and Tagoe have moved to dismiss. Inasmuch as we remanded only the record to DOES, and not the case, we deem all the Hospital's contentions to be properly before us pursuant to the original petitions for review. Because the Hospital's subsequent petitions (Nos. 07-AA-784 and 07-AA-785) are superfluous, we grant the motions to dismiss them.
[2] See D.C.Code § 2-510 (2001).
[3] Perkins v. District of Columbia Dep't of Employment Servs., 482 A.2d 401, 402 (D.C. 1984).
[4] Clark v. District of Columbia Dep't of Employment Servs., 772 A.2d 198, 201 (D.C.2001) (internal quotation marks and citations omitted).
[5] See Vogel v. District of Columbia Office of Planning, 944 A.2d 456 (D.C.2008); Georgetown Univ. v. District of Columbia Dep't of Employment Servs., 862 A.2d 387, 391 (D.C. 2004).
[6] The CRB, an arm of the DOES's Office of Hearings and Adjudication, exercises the Director's delegated authority to perform administrative appellate review in workers' compensation cases, in accordance with D.C.Code § 32-1521.01 (Supp.2008).
[7] See, e.g., Colbert v. District of Columbia Dep't of Employment Servs., 933 A.2d 817, 819-20 (D.C.2007); Mushroom Transp. v. District of Columbia Dep't of Employment Servs., 761 A.2d 840, 844-45 (D.C.2000).
[8] While the Hospital conceded that Tagoe's stroke was work-related, it contended that her ensuing migraines had an independent origin. The Hospital also argued that Tagoe's migraines were not disabling and that she had voluntarily limited her income in the aftermath of her injury. Finally, the Hospital argued that Tagoe's claim for vocational rehabilitation benefits could not be considered because she had not presented it to the Hospital or the Office of Workers' Compensation prior to the hearing.
[9] See D.C.Code § 32-1513(a)-(c) (2001). The notice must contain "a statement of the time, place, nature, and cause of the injury...." Id., § 32-1513(b).
[10] Teal v. District of Columbia Dep't of Employment Servs., 580 A.2d 647, 652 (D.C. 1990).
[11] See Safeway Stores, Inc. v. District of Columbia Dep't of Employment Servs., 832 A.2d 1267, 1269-71 (D.C.2003); see D.C.Code § 32-1507 (2001).
[12] See, e.g., Teal, 580 A.2d at 652.
[13] D.C.Code § 32-1513(d) (2001).
[14] Mushroom Transp. v. District of Columbia Dep't of Employment Servs., 698 A.2d 430, 431 (D.C.1997).
[15] See Jimenez v. District of Columbia Dep't of Employment Servs., 701 A.2d 837, 840 (D.C. 1997) ("If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand. . . for findings on that issue.") (internal quotation marks and citations omitted).
[16] See Howrey & Simon v. District of Columbia Dep't of Employment Servs., 531 A.2d 254, 256 n. 2 (D.C. 1987) (noting that under the comparable, though not identical, provision of the Longshore and Harbor Workers' Compensation Act, the requisite knowledge on the part of the employer will be found if the employer knows of the injury and "has facts that would lead a reasonable man to conclude that compensation liability is possible") (quoting Stevenson v. Linens of the Week, 223 U.S.App. D.C. 1, 8, 688 F.2d 93, 100 (1982)).
[17] See D.C.Code § 32-1501(12) (2001) (defining the term "injury") (emphasis added).
[18] McIntyre v. Safeway Stores, Inc., 2002 D.C. Wrk. Comp. LEXIS 308, at *8-9 (D.C.Wrk.Comp.2002) (concluding, in view of the purposes of the notice requirement, that to satisfy the exception in subsection (d)(1), an employer must be informed "that an injury occurred, when and where the injury happened, and the work activity that caused injury with a degree of specificity such that the employer gains the quantum of information that would lead a reasonable man to conclude that liability is possible and an investigation should ensue").
[19] See 7 LARSON'S WORKERS' COMPENSATION LAW § 126.03[1][b] (rev. ed. 2007) ("There must in addition be some knowledge of accompanying facts connecting the injury or illness with the employment and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim.") (footnotes omitted).
[20] According to both Tagoe and Dr. Weir's treatment notes, the conversation in question took place on October 10 rather than October 12, 2000, an immaterial difference. Dr. Weir's handwritten October 10 treatment notes report that he had an "extensive conversation" with Tagoe on that date concerning her symptoms and their etiology. The notes go on to state:

Migraine is probable diagnosis and probable etiology for ischemic brain disease. Volume of work and no sleep is an etiologic factor in her symptoms.
[21] Thus, the ALJ noted,

When she was asked by employer, in January of 2001, whether her symptoms . . . were interfering with her work performance, claimant stated that she was well enough to continue. She also rejected the recommendation of employer's educational committee that she take time off until being cleared by her physician.... There is no evidence to show claimant's overall performance took an extended, or significant, nose-dive which prevented successful completion of her residency requirements.
Indeed, the ALJ added, "[t]hrough twelve rotations, claimant received several `superior' ratings."
[22] The ALJ added that the validity of Tagoe's expectation was corroborated by Dr. Weir's treatment notes of October 12, 2000, in which he wrote, "I will speak with Dr. Ford (Program Director)." The October 12 treatment notes do not disclose what Dr. Weir intended to tell Dr. Ford, however. In her hearing testimony, Tagoe stated that Dr. Weir subsequently told her he spoke with Dr. Ford about reducing her hours of work. Tagoe did not confirm whether Dr. Weir also told Dr. Ford that her stroke or her migraines were work-related. (Tagoe further testified that, despite Dr. Weir's recommendation, her workload was not, in fact, reduced.) There is no testimony in the record from Dr. Weir or Dr. Ford, nor any documentation of their conversation.
[23] See, e.g., Safeway Stores, 832 A.2d at 1271.
[24] The Hospital urged the CRB to overturn the ALJ's conclusion as erroneous in the absence of evidence and findings that the circumstances actually prevented Tagoe from giving timely notice. The CRB declined to address that issue, however, in view of what it perceived to be its limited jurisdiction under the terms of our remand order, which stated that, after our inquiries were answered, "the record thus amplified should be returned to this division of the court for a final decision on the pending petitions for review."
[25] See Dillon v. District of Columbia Dep't of Employment Servs., 912 A.2d 556, 559 (D.C. 2006); Jimenez, 701 A.2d at 840.
[26] See Wahlne v. District of Columbia Dep't of Employment Servs., 704 A.2d 1196, 1198 (D.C. 1997).
[27] We recognize that "[i]n any proceeding for the enforcement of a claim for [worker's] compensation ... it shall be presumed, in the absence of evidence to the contrary . . . [t]hat sufficient notice of such claim has been given." D.C.Code § 32-1521(2) (2001). This presumption "applies both to the written notice requirement and to the alternative provision for actual knowledge by the employer." Dillon, 912 A.2d at 560 n. 6 (citations omitted). But "the presumption operates only `in the absence of evidence to the contrary' and, once rebutted, `drops out of the case entirely,' leaving the burden on the employee to prove timely notice." Id. at 560 (quoting Washington Post v. District of Columbia Dep't of Employment Servs., 852 A.2d 909, 911 (D.C.2004)). The Hospital rebutted the presumption in the present case.
[28] Our dissenting colleague characterizes the ALJ's conclusion, that Tagoe's failure to give notice was excusable under subsection (d)(2) because there were satisfactory reasons why she could not have given timely notice of her claim, as a factual finding entitled to deference. Post at 614. We disagree with that characterization. What is noteworthy, and dispositive, is that the ALJ did not find, and could not have found on the evidence presented, that Tagoe was unable to give timely notice.
[29] See, e.g., Springer v. District of Columbia Dep't of Employment Servs., 743 A.2d 1213, 1219 (D.C.1999).
[30] See Teal v. Washington Gas Light, 1988 D.C. Wrk. Comp. LEXIS 68, at *8 (D.C.Wrk.Comp.1988); see also 7 LARSON'S WORKERS' COMPENSATION LAW § 126.09[2] ("Mental or physical incompetence is a common excuse for lateness in filing claim . . . but not mere emotional upset because of the accident.") (footnotes omitted).
[31] See Teal, 580 A.2d at 649, 651.
[32] See Darbo v. Sapphire Techs., 2004 D.C. Wrk. Comp. LEXIS 75, at *21 (D.C.Wrk.Comp.2004) ("[Claimant's] explanation as to the reason for not so notifying [her employer] was that she was unaware of her obligation to do so. Such a reason, while understandable, is not included in the Act as a sufficient basis to excuse the failure to give the required notice."). The ALJ's decision in Darbo was upheld by the CRB, see Darbo v. Sapphire Techs., 2006 D.C. Wrk. Comp. LEXIS 203 (D.C.Wrk.Comp.2006), and thereafter affirmed in an unpublished opinion of this court, Darbo v. District of Columbia Dep't of Employment Servs., 925 A.2d 624 (D.C.2007).
[33] See D.C.Code § 32-1501(8) ("`Disability' means physical or mental incapacity because of injury which results in the loss of wages."); Washington Post v. District of Columbia Dep't of Employment Servs., 675 A.2d 37, 40 (D.C. 1996) ("Disability is an economic and not a medical concept.").
[34] One of Tagoe's complaints to the ACGME, to which her supervisor responded, was that she did not receive support and understanding in the aftermath of her injury, in violation of a requirement that the program director monitor resident stress and ensure that undue stress and fatigue among residents are avoided.
[35] The cited statute was repealed after the Director's decision in this case by D.C. Law 15-205, § 1102(b), 51 D.C.Reg. 8441 (Dec. 7, 2004).
[36] In fact, as the Director noted, Tagoe and her counsel made a tactical decision, memorialized in the record, not to bring up her ACGME complaint before the ALJ.
[37] D.C.Code § 32-1507(c) (2001).
[1] Although our remand order specifically asked that the ALJ answer three "factual questions" in this regard, see ante at 608, the court now characterizes the ALJ's finding as "a legal conclusion" that "does not flow rationally from the factual findings on which it is based." See ante at 611. Regardless of how it is characterized, the ALJ's determination was not reviewed by the CRB and we do not have the benefit of its views on the proper interpretation of section 32-1513(d)(2).
[2] At the time Teal was decided, this section was codified at D.C.Code § 36-313(a).
[3] At the time Teal was decided, this section was codified at D.C.Code § 36-313(d)(2).
[4] The CRB opposed the request for remand "unless the court is of the view that it would benefit from an additional decision" by the CRB, and further states that "if the court is of the view that the CRB's authoritative construction of the provision would assist the court, a remand would be appropriate." This is somewhat inconsistent with the CRB's clear exposition of the law with respect to its primary role in interpreting the statute it is charged with implementing. Its reluctance before this court may be due in part to its view that the court intended to limit its jurisdiction on remand.
[5] The statute provides that notice to the employer's "agent in charge of the business in the place where the injury occurred" suffices to give notice to the employer, if there is no prejudice to the employer. D.C.Code § 32-1513(d)(1). Here, HUH concedes it was not prejudiced. The majority determines, however, that Dr. Weir was not HUH's "agent" for purposes of notice because he was not claimant's supervisor, "nor was he charged with any duty as a Hospital employee to report her work-related injury to his superiors." See ante at 611. As the ALJ did not make any fact-finding in this regard, it is unclear what evidentiary basis there is for the court's determination (the majority does not mention any) that Dr. Weir had no such obligation.
[6] The ALJ determined the existence of a causal connection, whether the migraines were caused or aggravated by the conditions at work.